LEHIGH VALLEY R. CO. et al. v. CLARK et al.

(Circuit Court of Appeals, Third Circuit. August 25, 1913.)

No. 1,708.

1. COMMERCE (§ 91*)—INTERSTATE COMMERCE COMMISSION—AWARD OF DAMAGES —ACTION.

A suit brought by one in whose favor the Interstate Commerce Commission has made an award of damages by way of reparation, under the authority of Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384, as amended by Act March 2, 1889, c. 382, § 5, 25 Stat. 859, and Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1911, p. 1301), is not a suit on the award, qua award, to recover the amount of the same, but a plenary suit for damages actually sustained by the plaintiff by reason of the violation of the act as conclusively found by the Commission, and he must prove facts from which defendants' liability may be properly inferred, and not merely conclusions of the Commission from facts.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec. Dig. § 91.*]

2. COMMERCE (§ 95*)—INTERSTATE COMMERCE COMMISSION—AWARD OF DAMAGES.

The procedure contemplated by the act, which provides that the suit shall proceed like other civil suits for damages, is a jury trial, unless waived, accompanied by the usual safeguards furnished by a proper application of the principles of evidence, with the exception that, as provided, the findings and order of the Commission are admissible as prima facie evidence "of the facts therein stated," which must be sufficiently clear and definite to advise the defendant of the violations charged.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

3. COMMERCE (§ 95*)—INTERSTATE COMMERCE COMMISSION—AWARD OF DAMAGES.

It does not follow, from a finding by the Commission that a given tariff rate established by an interstate carrier is unreasonable and that a lower rate fixed by the Commission is reasonable, that plaintiff has suffered pecuniary damage by reason of the exaction of the former rate, nor, if so, that the measure of such damage is the difference between the two rates; nor is an order of the Commission, awarding plaintiff damages to the extent of the difference in rates by way of reparation, prima facie evidence of the defendant's liability in the subsequent action, which is a private suit for damages, and not for a penalty.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

4. COMMERCE (§ 95*)—INTERSTATE COMMERCE ACT.

A report of the Commission, awarding damages to a plaintiff as reparation for excessive rates charged, held not to contain findings of fact, as required by Interstate Commerce Act Feb. 4, 1887, c. 104, § 14, 24 Stat. 384 (U. S. Comp. St. Supp. 1911, p. 1297), sufficient to constitute prima facie evidence of actual damage sustained by plaintiff.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; James B. Holland, Judge.

Action by J. Mitchell Clark, William H. Mills, and J. Armstrong Rawlins, copartners trading under the firm name of Naylor & Co., against the Lehigh Valley Railroad Company, the Buffalo, Rochester & Pittsburgh Railway Company, the New York Central & Hud-

son River Railroad Company, the Philadelphia & Reading Railway Company, the Central Railroad Company of New Jersey, and the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiffs, and defendants bring error. Reversed.

Edgar H. Boles, of New York City, and James F. Campbell, Abraham M. Beitler, John G. Johnson, and H. S. Drinker, Jr., all of Philadelphia, Pa., for plaintiffs in error.

Wm. Barclay Lex and Vivian Frank Gable, both of Philadelphia, Pa., and Frank Van Sant and Arthur R. Thompson, both of Washington, D. C., for defendants in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. In the court below, suit was brought by the defendants in error (hereinafter called the plaintiffs) against the plaintiffs in error (hereinafter called the defendant companies) under authority of the Act of Congress of February 4, 1887, amended by the Acts of March 2, 1889, and of June 29, 1906 (see 24 Stat. c. 104, 25 Stat. c. 382, and 34 Stat. c. 3591), to recover damages from the defendant companies, alleged to have been awarded by way of reparation to the plaintiffs, in certain proceedings had before the Interstate Commerce Commission.

As authorized by section 13 of said Act, the plaintiffs, on April 4, 1908, applied by petition to the said Commission, complaining that defendant companies, during certain named years, had exacted and collected from the plaintiffs the rate of $2.00 per gross ton for the transportation of pyrites cinder, by rail from Buffalo, New York, to points of destination in Pennsylvania and New Jersey. The plaintiffs, as petitioners as aforesaid, attacked the rate of $2.00 per gross ton on pyrites cinder, as excessive, unjust, unreasonable, and unduly discriminatory, and therefore in violation of the said Act and the Acts amendatory thereof, and prayed that the defendant companies be ordered to desist from exacting and collecting such unreasonable rate; that a lower rate be put in effect, and that reparation be granted to the petitioners. The defendant companies, having been served with a copy of said complaint, made answer thereto; issue was joined, and the cause regularly heard and argued by the parties. Thereafter, January 5, 1909, as alleged in the petition of plaintiffs in the court below, the Interstate Commerce Commission made a finding and report, which was duly filed, ordering the said $2.00 rate on pyrites cinder to be reduced to a rate not exceeding $1.45 per gross ton for the carriage thereinbefore named, but refused to award reparation to the plaintiffs; a certified copy of which finding, with the order of the Commission, is attached and made part of the petition and statement of claim of the plaintiffs. It is then alleged by plaintiffs that the defendant companies duly complied with this order of the Interstate Commerce Commission, and on or before February 25, 1909, established, and put in effect, and now have in effect, the aforesaid reduced transportation rate. It is further alleged that on May 9, 1909, the plaintiffs duly filed with the Interstate Commerce

Commission a motion for a rehearing on the question of reparation alone, which motion was granted, and notice of the granting of the same given to all parties, who appeared at the taking of additional testimony by the plaintiffs; that after hearing and argument, the Interstate Commerce Commission, on June 2, 1910, made a finding and ordered the defendant companies to make reparation to the petitioners, specifying the amount to be refunded in each case, a certified copy of the report, conclusions, and order of the Commission on the rehearing being attached as an exhibit to the petition and statement of plaintiffs in the court below. The plaintiffs aver that a true copy of the aforesaid order of the Commission, dated June 2, 1910, was duly served upon the defendant companies, and demand made that they should pay to the petitioners the sum claimed in their petition and set forth in the aforesaid order of the Commission, but that said defendant companies have wholly failed, neglected, and refused to pay the same, etc.

Upon the facts thus alleged, the plaintiffs aver in their petition and statement of claim in the court below, that they are lawfully and legally entitled to receive and recover from the said defendant companies the several amounts of money set forth, as and for damages and reparation, in accordance with the said order of the Interstate Commerce Commission, dated June 2, 1910.

Section 14 of the original Interstate Commerce Act provided that in an investigation made by the Commission, it shall be its duty to make a report in writing, which shall include the findings of fact upon which the conclusions of the Commission are based, together with its recommendation as to what reparation, if any, should be made to the parties found to have been injured, "and such findings so made shall thereafter, in all judicial proceedings, be deemed prima facie evidence as to each and every fact found." Section 16 provided for the refusal or neglect "to obey * * * any lawful order or requirement of the Commission," by authorizing the Commission and the party interested in such order or requirement, to apply in a summary way to a Circuit Court of the United States *sitting in equity,* and empowering such court, as a court of equity, to hear and determine the matter, on notice to the common carrier complained of, "in such manner as to do justice in the premises," with full power to conduct all such inquiries as the court may think needful to enable it to form a just judgment in the matter, "and on such hearing * * * the report of said Commission shall be prima facie evidence of the matters therein stated." And it is provided that, if it be made to appear to the court "that the *lawful order or requirement* of said Commission, drawn in question, has been violated or disobeyed," the court may issue a "writ of injunction or other proper process, mandatory or otherwise," to restrain the common carrier from further violation or disobedience of the order or requirement of the Commission, and enjoining obedience to the same, with power to issue writs of attachment or other process incident or applicable to writs of injunction or other proper process, mandatory

or otherwise, against such common carrier. (The italics here, as elsewhere, are ours).

It seems clear from these sections of the Act of 1887, as they originally stood, that Congress had not contemplated a distinction between reparation cases and other cases in which the order of the Commission was not complied with. Circuit Courts were vested with jurisdiction to entertain the complaint of a person interested, that an order had not been complied with, and to hear and determine the matter as courts of equity, giving the redress peculiarly appropriate to equitable jurisdiction, and for that purpose, all the findings of fact by the Commission, as well as all the evidence taken before the Commission, as set forth in the record, were before the court. As all the proceedings for the enforcement of the legal orders of the Commission were solely in equity, a difficulty was soon recognized in reparation cases. It is one thing to enforce by injunction or mandatory process the lawful ministerial order of the Commission, as to things to be done or not to be done in futuro by defendant carriers in the conduct of their business, and quite another thing to enforce an order for the payment of damages by such carriers for a past violation of law. The claim for such damages, as said by the Commission in Heck & Petree v. Railroad Co., 1 Interst. Com. Com'n R. 775, "presents a case at common law in which the defendants are entitled to a jury trial," under the seventh amendment to the Constitution. As the statute provided for no trial by jury in the suits to enforce such awards, the Commission repeatedly held that it could make no award of damages in such case, for the reason that the defendants were entitled to have the amount assessed by a jury.

This state of things undoubtedly brought about the amendment to section 16 of the original Act, by the Act of March 2, 1889. By this amendment, Congress recognized the propriety of the suggestion made by the Commission, and added to section 16 of the original Act, the following:

"If the matters involved in any such order or requirement of said Commission are founded upon a controversy requiring a trial by jury, as provided by the seventh amendment to the Constitution of the United States, and any such common carrier shall violate or refuse or neglect to obey or perform the same, after notice, * * * it shall be lawful for any company or person interested in such order or requirement to apply in a summary way by petition to the Circuit Court of the United States sitting as a court of law * * * alleging such violation or disobedience as the case may be; and said court shall by its order then fix a time and place for the trial of said cause. * * * And it shall be the duty of the marshal of the district * * * to forthwith serve a copy of said petition, and of said order, upon each of the defendants, and it shall be the duty of the defendants to file their answers to said petition within ten days. * * * At the trial [of] the findings of fact of said Commission as set forth in its report shall be prima facie evidence of the matters therein stated."

This amendment, made to preserve the constitutionality of reparation proceedings, left the jurisdiction, in cases not involving reparation, to the Circuit Courts sitting as courts of equity, as originally

provided. These cases arise either on a petition by the Commission or party interested, to enforce its order, or on an application for injunction by the party defendant, to restrain its enforcement. In either case, the entire record is before the court, and it can examine all the evidence before the Commission, or evidence in addition thereto, to determine the question of the *legality* of the order. The making of such an order is a ministerial function, though *quasi* judicial in the sense that it must be made in the course of an orderly procedure, in which the parties interested may be fairly heard and evidence fairly considered. These fundamental conditions appearing, the order is *"lawful,"* and must be obeyed and enforced. It is as though Congress had enjoined as a duty the things embraced in such lawful order. It is in this view of a non-reparation case that the finding by the Commission of the reasonableness or unreasonableness of a rate is a finding of an ultimate fact, which will not be disturbed by a court of equity unless the legality of the proceeding in which it is made is successfully attacked.

In such cases, the judicial power of a court of equity is invoked, to enforce, the *lawful* order of the Commission, and involves no controversy requiring a trial by jury. It is the *lawful* order, *qua* order, of the Commission, as an administrative body, that is to be enforced; whereas, in reparation cases, there is a controversy at common law as to whether the damages awarded by the Commission or any damages are recoverable, and the mere order of the Commission, as we shall see, only figures in the case as a necessary condition precedent to the bringing of the action, though the findings of facts by the Commission, as set forth in its report, are prima facie evidence of the matters therein stated. The damages sought are only recoverable by the verdict of a jury and judgment thereon, as in ordinary trials at common law.

Section 14 of the original Act of 1887 is left unchanged by this amendatory Act of 1889. By the Act of 1906 (commonly called the "Hepburn Act") important amendments were made to the Act of 1887, as amended by the Act of 1889. The most important of these amendments was the enlargement of the powers of the Commission, by authorizing them, not only to find the rates of interstate carriers unreasonable or excessive, but to determine and fix and make mandatory what, in the opinion of the Commission, under all the circumstances, would be a reasonable rate. Section 14 was amended so as to read as follows:

"That whenever an investigation shall be made by said Commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises; and in case damages are awarded such report shall include the findings of fact on which the award is made."

The effect of this amendment is, that in *non-reparation cases,* for reasons peculiar to such cases, as above pointed out, the Commission henceforth need make no findings of fact on which it bases its conclusions. In reparation cases, however, it is still bound to make

findings of all the facts, which it was its duty to make before the amendatory Act of 1906; not merely the facts relating to petitioner's particular tonnage and dates of shipment, but also all the facts on which the Commission based its conclusion as to the propriety of an award of damages.

Section 16 was also amended, so as to make still more clear the distinction between reparation and non-reparation cases. It provides that where, after hearing on a complaint, the Commission should determine that complainant is entitled to an award of damages, under the provisions of the Act, for a violation thereof, it "shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named. If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant * * * may file in the Circuit Court of the United States for the district in which he resides * * * a petition setting forth briefly the *causes* for which he claims damages, and the order of the Commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit, the findings and order of the Commission shall be prima facie evidence of the facts *therein stated.* After other provisions, with which we are not here concerned, the section further emphasizes the distinction between reparation and non-reparation cases, as follows:

"If any carrier fails or neglects to obey any order of the Commission, *other than for the payment of money,* while the same is in effect, any party injured thereby, or the Commission in its own name, may apply to the Circuit Court in the district where such carrier has its principal operating office, * * * for an enforcement of such order. Such application shall be by petition, which shall state the substance of the order and the respect in which the carrier has failed of obedience, and shall be served upon the carrier in such manner as the court may direct, and the court shall prosecute such inquiries and make such investigations, through such means as it shall deem needful in the ascertainment of the facts at issue or which may arise upon the hearing of such petition. If, upon such hearing as the court may determine to be necessary, it appears that the order was regularly made and duly served, and that the carrier is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction, or other proper process, mandatory or otherwise," etc.

As we have remarked, section 14, as amended by the Act of 1906, relieved the Commission of the duty of stating specifically the findings of fact on which it based its conclusions in cases where damages were not awarded, and it is simply required to make a report, which shall state the conclusions of the Commission, together with its decision, order or requirement in the premises. The District Court, as a court of equity, will consider the order it is asked to enforce as valid, when it appears to have been made in the course of a regular hearing and to be founded upon evidence and facts proved. Much light is thrown upon a situation of this kind by the recent decision of the Supreme Court in the non-reparation case of Interstate Commerce Commission v. Louisville & Nashville R. R. Co., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431. Mr. Justice Lamar, delivering the opinion of the court, said:

"In a case like the present the courts will not review the Commission's conclusions of fact (Int. Com. Comm. v. Del., etc., Ry., 220 U. S. 251 [31 Sup. Ct. 392, 55 L. Ed. 448]), by passing upon the credibility of witnesses or conflicts in the testimony. But the legal effect of evidence is a question of law. A finding without evidence is beyond the power of the Commission. An order based thereon is contrary to law, and must, in the language of the statute, 'be set aside by a court of competent jurisdiction.' 36 Stat. 551." So. Pac. Co. v. Int. Com. Comm., 219 U. S. 433, 31 Sup. Ct. 288, 55 L. Ed. 283.

So much for the conclusiveness of a decision or order of the Commission in a non-reparation case, where a court of equity is asked to enjoin the enforcement of such decision or order as the valid order of an administrative body. Such an order, if it stands the tests of legality laid down by the Supreme Court in the case above referred to, is conclusive upon a court of equity where such administrative order is sought to be enforced. But it is clear that, in a reparation case, though the award of damages by the Commission, following its finding of fact that a given rate was unreasonable, may be proved as the basis or condition precedent to the institution of the suit for damages authorized by the statute, it is not capable of enforcement as an administrative order, and is not of itself evidence of *liability, prima facie* or otherwise, in any judicial proceeding.

The amended Act of 1906, no less than the original Act, or the same as amended in 1889, expressly requires that the report of the Commission "shall include the findings of fact on which the award is made." The Act of 1889 and the Act of 1906 both provide that, where damages are awarded by way of reparation, they can be recovered or enforced only by a suit at common law in a Circuit Court of the United States, requiring a trial by jury. The Act of 1906 makes clear the plenary character of such a suit, by providing that it "shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be *prima facie* evidence of the facts therein stated." It hardly needs that attention be called to what is so obvious, that both the "findings and order" are prima facie evidence only of the *facts* therein stated. This is very far indeed from declaring that the order itself, awarding reparation, is *prima facie* evidence of damages, or the proper measure thereof.

As to the provisions covering reparation cases, Congress is no longer dealing with those matters which concern the practical management and conduct of the business of carriers and the regulation thereof *in futuro,* in the interests of the public generally, but is conferring a private right of action upon those who have suffered actual damage, by reason of such carriers' violation of some requirement of the Act. The conferring of such right of action, though incident to its power to regulate commerce, is not a regulation thereof. It makes redress of a private injury actually suffered, possible. It concerns the past and not the future conduct of the carrier, and, though this right of action for damages is qualified by making it depend in certain cases upon the precedent award of reparation by the Commission, such award is not of the nature of the administrative functions conferred on that body.

In the case of Western N. Y. & P. R. Co. v. Penn Refining Co., 137 Fed. 343, 70 C. C. A. 23, which was decided with reference to the original Act, as amended by the Act of 1889, we said:

"In proceedings at law under section 16, as amended, for the enforcement of an order or requirement of the commission, the parties are entitled to an impartial trial by jury, so conducted as to accord to them in full measure the enjoyment of their constitutional right. The procedure contemplated by the act and, unless waived, required by the Constitution, is jury trial, accompanied with the usual safeguards furnished by a proper application of the principles of evidence and the proper submission of the case to the jury."

The judgment in this case was affirmed by the Supreme Court, with no criticism of the language quoted. Penn Refining Co. v. West N. Y. & P. R. R. Co., 208 U. S. 208, 28 Sup. Ct. 268, 52 L. Ed. 456.

With this understanding of the true intent and meaning of the Interstate Commerce Act of 1887, as amended in the respects hereinbefore discussed, we may state as conclusions fairly resulting therefrom, the following:

[1] (1) That a suit brought by one in whose favor the Commission has made an award of damages by way of reparation, under the authority of section 16 of the Act, is not a suit on the award, *qua* award, to recover the amount of the same, but a plenary suit for damages actually incurred by the plaintiff, by reason of the violation of the act by the defendant as conclusively found by the Commission.

(2) In the prosecution of such a suit, plaintiff may avail himself, without further proof, of the conclusive administrative finding or order of the Commission that the defendant was guilty of the violation of the act complained of, but must prove the actual damages incurred by him by reason of such violation and for which damages alone the Act makes the defendant carrier liable.

(3) In addition to this advantage given to the plaintiff in the prosecution of such a suit, plaintiff need not examine witnesses or offer other proof, in the first instance, of the facts stated in the findings or order of the Commission, such findings or order being made prima facie evidence thereof.

[2] (4) Such suit is expressly required by the Act to be proceeded in "like other civil suits for damages," which can mean nothing less than that the "parties are entitled to an impartial trial by jury, so conducted as to accord to them in full measure the enjoyment of their constitutional right."

(5) This essential right is not invalidated or impaired by the qualification of the rules of evidence, to the effect that "the findings and order of the Commission shall be prima facie evidence of the facts therein stated."

(6) By reason of this qualification, the plaintiff may now avail himself of a new method to get these facts before the jury, and that method is this: There must be found somewhere and in some form sufficiently clear and sufficiently definite findings of the Commission, in which the needful facts are stated and by which the defendant is thus given due notice of the facts to be urged against him, so that he may, if he can, controvert their prima facie effect.

[3] (7) It does not necessarily follow, from a finding by the Com-

mission that a given tariff rate established by the defendant is unreasonable and that a lower rate fixed by the Commission is reasonable, that plaintiff has suffered pecuniary damage, by reason of the exaction by defendant of the former rate, or, if any such damage has been suffered, that the difference between the rate abrogated and the lower rate established is the measure of such damage. If any damage is shown, it may be either greater or less than such difference.

(8) The authorization of a suit for damages by one claiming to be injured by a specific violation of the Act by a carrier, is not the imposition of a penalty in addition to the fines imposed and made payable to the government for every specific violation of a requirement of the Act, but a remedy for the recovery of damages actually incurred by a private person because of the wrongful act of the carrier.

We turn to the consideration of the case, as presented in the record before us. The plaintiffs, in their petition to the court below, set forth the fact of their application to the Interstate Commerce Commission, charging against the defendant companies the exaction of an excessive and unreasonable rate per ton for the transportation of pyrites cinder between points in the state of New York and the states of Pennsylvania and New Jersey. They then set forth the statements made by the Commission in two several reports, in the first of which, dated January 5, 1909, the Commission finds the rate as complained of unreasonable, and directs that it thereafter be reduced to a rate named, but declines to award damages by way of reparation. They also allege that the defendant companies duly complied with the aforesaid order of the Commission within the time limited therefor. The petition then states that on May 8, 1909, the petitioners filed a motion with the Commission for a rehearing, on the *question of reparation alone,* notice of the granting of which was duly given to all parties who appeared at *the taking of additional testimony by the petitioners,* and that after hearing and argument, the Commission made a report, awarding damages as prayed for. The petition then concludes with a statement of the demand made from the defendant companies for the payment of the sum awarded, and of their refusal to pay the same.

At the trial, the plaintiffs offered in evidence these reports and orders of the Interstate Commerce Commission, as prima facie evidence of the facts found therein. After objection by counsel for the defendant companies, the said reports and orders of the Commission were admitted for what they were worth as findings of fact. Except that one witness was produced to prove that the award of the Commission had not been paid by the defendants, these two reports and orders constituted the only evidence produced by the plaintiffs, and after their admission by the court, plaintiffs rested their case. No evidence was offered by the defendants.

The first report, and the order made thereon January 5, 1909, is as follows:

"This complaint involves the reasonableness of the rate of $2 per gross ton on pyrites cinder over the lines of the defendant companies from Buffalo, N. Y., to points in the states of Pennsylvania and New Jersey.

"Iron pyrites is a high grade ore containing a large percentage of both sulphur and metallic iron. It is imported, chiefly from Spain, by fertilizer and

chemical works located in this country. At these works this ore is burned in specially constructed furnaces, and from the arising sulphuric fumes sulphuric acid is obtained. The resultant product, pyrites cinder, contains approximately 60 per cent. of iron and a small residue of sulphur, usually from 1 to 3 per cent., the amount of residue determining the value of cinder to the iron manufacturer, as the presence of sulphur lessens the value of iron ore. This pyrites cinder, the rate upon which complainants claim to be excessive, is shipped to blasting furnaces in Pennsylvania and New Jersey, where the iron is subtracted and used in the manufacture of pig iron. It is alleged by the complainants that pyrites cinder being a low grade commodity, valued at about $1 per gross ton at Buffalo, is unable to move at the $2 per ton rate; the output at the chemical works at Buffalo being from 20,000 to 25,000 tons per year, only one-quarter of which is sold. Pyrites cinder is also produced at chemical works in Bayonne, N. J., where it is valued at $2 per ton, the difference between the value at Buffalo and the value at Bayonne being, it is claimed, accounted for because of the difference in freight rate to points of destination in New Jersey and Pennsylvania. This fact is emphasized by complainants that the iron pyrites bears a rate from New York, Philadelphia and Baltimore to Buffalo of but $1.40 per ton, while the pyrites cinder for a return haul of but a part of the distance bears a rate of $2 per ton, the cheaper commodity for a shorter haul being charged a greater amount than the higher grade commodity for a longer haul.

"The contention of the defendants by way of answer is that pyrites cinder should take a higher rate than iron ore between the same points, owing to the longer time consumed in loading the former than the latter, and because iron ore is consumed in greater quantities than pyrites cinder. It appears that it does in fact take much less time to load iron ore than pyrites cinder, and a car load of iron ore is slightly heavier than a load of pyrites cinder The rate on iron ore is $1.45 per ton to points of destination carrying a $2 rate on pyrites cinder.

"We are of the opinion that the rate on pyrites cinder should not exceed the rate on iron ore from Buffalo, and an order will be made accordingly. Reparation will not be awarded."

The second report and order of June 2, 1910, made upon a rehearing and investigation upon the question of reparation alone, as applied for by the plaintiffs, is as follows:

"In the report made by this Commission following an inquiry into the reasonableness of the rate of $2 per gross ton exacted by the defendants for the transportation of pyrites cinder from Buffalo, N. Y., to points in the states of Pennsylvania and New Jersey, the rate was found excessive and the defendants were ordered to establish a rate not to exceed that contemporaneously applying on shipments of iron ore between the same points. Reparation was denied. Naylor & Co. v. L. V. R. R. Co., 15 Interst. Com. Com'n R. 9.

"Pursuant to the Commission's order the defendants reduced the rate on pyrites cinder to $1.45, the rate on iron ore. The complainant thereupon filed a motion for a rehearing upon the question of reparation, and after consideration by the Commission the motion was granted. *Additional evidence* was taken and the parties were heard in oral argument.

"We now find that the rate of $2 per gross ton, assessed and collected by the defendants on the shipments giving rise to complaint, was unjust and unreasonable to the extent that it exceeded the subsequently established rate of $1.45 per gross ton. Complainant is entitled to reparation on all shipments moving within the period of the statute of limitations."

Then follow the specific awards against the different defendant companies.

Plaintiffs contend that this hearing and investigation applied for by plaintiffs on the question of reparation alone, though had more than a year after the former report denying reparation, was a rehearing

of the original application to the Commission, and that therefore the first report and such findings as were contained therein were part of the second report. While this may in some respects be true, it is also true that reparation had been denied at the first hearing, and that the second hearing on the question of reparation alone was a distinct proceeding on that issue. That it was so, appears by the statement of the Commission itself, that "additional evidence was taken and the parties were heard in oral argument." It does not follow that, because a given rate is found to be excessive and unreasonable, and is ordered to be discontinued and another rate established, the complainant has suffered or is entitled to damages by way of reparation. Notwithstanding such a finding and order, there are many circumstances and considerations, such as the relations between the parties, want of knowledge by the defendant companies of the facts bearing on the question of reasonableness, lack of intention to violate the law in that respect, or lack of proof of actual damage suffered by plaintiffs, which might influence the Commission or a jury in coming to the conclusion that the applicant was not entitled to an award of reparation or damages. And this was the conclusion of the Commission at the first hearing. The fact that, while pyrites cinder was paying $2.00 per gross ton, from Buffalo, New York, to points in Pennsylvania and New Jersey, iron ore was being charged $1.45 per ton, from the ports of Philadelphia and Baltimore to Buffalo, and that such difference was unreasonable, was not sufficient at the first hearing to convince the Commission that the applicant had suffered or was entitled to pecuniary damages. As said by the Supreme Court in Parsons v. Chicago & N. W. Ry., 167 U. S. 447, 17 Sup. Ct. 887, 42 L. Ed. 231:

"The only right of recovery given by the Interstate Commerce Act to the individual, is to the persons or person injured thereby for the full amount of damages sustained in consequence of any of the violations of the provisions of this Act; and before any party can recover under the Act, he must show, not merely the wrong of the carrier, but, that that wrong has operated to his injury."

And so we find that, in the second report in which reparation was awarded, the Commission states that additional evidence was taken and the parties were heard in oral argument. What this additional evidence was, or what were the facts which the Commission found, established by it, is nowhere stated in the report. So that we have nothing in the way of the findings of facts required by the statute upon which the award of reparation by the Commissioners was made. The second report does not state that reparation was awarded upon any supposed findings of fact in the first report. Nor could it well have been, because the Commission, though finding the charge made by the defendant companies to be unreasonable, distinctly declined to find that plaintiffs were entitled to reparation. It is reasonable to conclude, therefore, that the award of reparation was made upon the facts established by the additional evidence. Section 14 of the Interstate Commerce Act, as amended, is peremptory in its requirement that in such case the Commission should include in their report the findings of fact on which their award was made.

But, even if the reference to the first report were sufficient to incorporate all its statements and supposed findings of fact in the second report, yet the facts of which those statements or findings are the *prima facie* evidence, are wholly insufficient to support the plaintiffs' claim for damages.

As the Commission in its first report had refused reparation, it was relieved by the amendment of 1906 from the duty of including in its report, the findings of fact on which its conclusion as to the unreasonableness of the rate was based. Such findings are not to be expected in that report. The statements in the opinion that most nearly approach in character findings of fact, are that iron pyrites is a high grade ore containing a large percentage of both sulphur and metallic iron; that it is imported chiefly from Spain by fertilizer and chemical works; the ore is burned at these works, and from the arising sulphuric fumes, sulphuric acid is obtained; that the resultant product, pyrites cinder, contains approximately 60 per cent. of iron and a small residue of sulphur, usually from 1 to 3 per cent., the amount of residue determining the value of the cinder to the iron manufacturer, as the presence of sulphur lessens the value of iron ore; that this pyrites cinder is shipped to blast furnaces in Pennsylvania and New Jersey, where the iron is subtracted and used in the manufacture of pig iron. Though these facts be taken by the jury as *prima facie* true, they clearly have no relevancy to the demand of the plaintiffs for damages. What follows is a summary by the Commission of the contentions of the plaintiffs and the defendant companies, without any finding by the Commission as to the facts embodied therein, except that, in stating the contention of the defendant companies, it does affirm some of the facts upon which it is founded.

But for the reasons already stated, even if these statements of the contentions of the parties are to be regarded as findings of fact, we are still of opinion that, however they may have justified the finding of the Commission as to the unreasonableness of the charge on pyrites cinder, and the order for its reduction to the rate charged on iron ore, they do not justify the jury in awarding damages to the plaintiffs. It does not at all follow, as plaintiffs seem to be under the impression that it does, that because the Acts make certain findings of fact *prima facie* evidence of such facts, it also determines their probative force.

Counsel for plaintiffs apparently does not much rely, if at all, upon these statements in the first report of the Commission, to which we have referred, as findings of fact sufficient for his purpose. The case was apparently tried in the court below and has been argued here by counsel for the plaintiffs, on the theory that the Commission having found as a fact that the rate exacted by the carriers was unreasonable, that that fact, together with the award of reparation, as set forth in the reports and orders of the Interstate Commerce Commission, must stand as *prima facie* proof of plaintiffs' case before the jury. As a matter of fact, that was plaintiffs' claim in their petition. What we have already said, should be sufficient to expose the fallacy of that theory. It is only as to the *facts* contained in the order,

that the order is made prima facie evidence. But the orders themselves of the Commission are not *prima facie* evidence as to the question of liability in a judicial proceeding. As well said by Judge McCall in Darnell-Taenzer Lumber Company v. So. Pac. Co. (C. C.) 190 Fed. 659:

"This must be so for two reasons: First, if the Congress intended that the order making the award should be taken as prima facie evidence of the liability of the carrier, then it would seem that it did a useless thing in requiring the Commission by the terms of the Act to make findings of fact in cases wherein awards for damages are allowed. * * * In such a case the court would be at a loss to know whether it would be controlled by the facts reported or the order made by the Commission in pronouncing its judgment."

But, upon this theory, the case was actually submitted to the jury, and presumably upon that theory determined by them. We find that the court below submitted the case to the jury, as follows:

"These amounts were awarded by the Commission against these railroads in favor of the plaintiff.

"The plaintiff has submitted to you evidence to establish the fact that these railroads have not, up to this time, paid these awards. They also submit to you the reports of the Interstate Commerce Commission, for the purpose of showing that that finding was made by the Commission, and that these awards in favor of the plaintiff were made against these railroad companies. This same Act of 1887, the Interstate Commerce Act, section 16, says that such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and the order of the Commission shall be prima facie evidence of the facts therein stated. You will notice that the Act of Congress says that the findings of the Commission shall be prima facie evidence of the facts therein stated. In the report, the facts stated are, as I have read them to you, that is, the Commission finds that $2.00 a ton is an excessive charge on this ore, and it is excessive to the extent of the difference between $1.45 per ton and $2.00 per ton; and then it proceeds to state the number of tons that each of the railroads carried for the plaintiff at that excessive amount, and awards an amount to the plaintiff equal to the amount of the excessive charge on the number of tons carried. That is to say, it has found that these railroads owe this plaintiff the amount of money stated, and found in the report, because of the fact that the railroads charged them excessive freight. The act says that that shall be prima facie evidence. That means that it shall be established, prima facie, the facts therein contained unless contradicted or explained. The defendants have offered no evidence whatever, and leave the record as to the evidence the same as it was when the plaintiff closed its case. You have nothing, then, before you except that the Interstate Commerce Commission found that these railroads owe this plaintiff so much money, and that it has not yet been paid. The Act says that that finding of the Commission shall be prima facie evidence of the facts, and you will therefore say whether or not the plaintiff is entitled to recover the amount of money claimed against each railroad respectively."

We have quoted all that was said in submitting the case to the jury, that we may do no injustice to the learned and usually careful judge who delivered the charge. It is impossible to say that the jury were not led to believe that they were justified in considering that the order of the Commission, that these defendant companies should pay the plaintiffs so much money, was *prima facie* evidence of the defendants' liability therefor.

Since the argument and determination of this case, the opinion of the Supreme Court in Pennsylvania Railroad Co. v. International

Coal Mining Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, has been delivered, and by it the pivotal question·involved in this case has, we think, been authoritatively and finally disposed of.

In that case, the Coal Mining Company had sued the Pennsylvania Railroad Company, as a carrier in interstate commerce, for $37,268.-00, being the difference between the published tariff rates paid by the plaintiff and lower rates resulting from rebates from the published rates allowed óther coal dealers making like shipments over the same road, from the same point to the same destination.

It was objected by the defendant that, inasmuch as the suit was instituted by plaintiff in the court below, without first having made complaint to the Interstate Commerce Commission, and without any finding by that body that the facts stated constituted a rebate or discrimination prohibited by the Act, the court had no jurisdiction to entertain such suit. In disposing of this objection and sustaining the jurisdiction of the court, Mr. Justice Lamar, in delivering the opinion of the court, said:

"The tariff, so long as it was of force, was, in this respect, to be treated as though it had been a statute, binding as such upon railroad and shipper alike. If, as a fact, the rates were unreasonable, the shipper was nevertheless bound to pay and the carrier to retain what had been paid, leaving, however, to the former, the right to apply to the Commission for reparation. In view of this imperative obligation to charge, collect, and retain the sum named in the tariff, there was no call for the exercise of the rate-regulating discretion of the administrative body to decide whether the carrier could make a difference in rates between free and contract coal. For whether it could do so or not, the refund of any part of the tariff rate collected was unlawful. It could not have been legalized by any proof, nor could the Commission by any order have made it valid. The rebate being unlawful, it was a matter where the court, without administrative ruling or reparation order, could apply the fixed law to the established fact that the carrier had charged all shippers the published or tariff rate, and refunded a part to a particular class. This departure from the published tariff was forbidden, and section 8 (24 Stat. 382) expressly provided that any carrier doing any act prohibited by the statute should be 'liable to the person * * * injured thereby for the full amount of damages sustained in consequence of any such violation, * * * together with reasonable * * * attorneys' fee.'

"2. But although this suit was brought to enforce a cause of action given by this section to any person injured, it is a noticeable fact that in its pleading the plaintiff does not claim to have been damaged, and there is neither allegation nor proof that it suffered any injury. It contends, however, that this was not necessary, for the reason that, as matter of law, it was entitled to recover as damages the same rate per ton on all plaintiff's shipments as had been rebated any other person, on any of his tonnage, shipped at the same time, over the same route."

The question here raised is in principle precisely that raised in the present case. Here, as there, in its pleading the plaintiff does not claim ·specific damages, but contends that, as matter of law, it was entitled to recover, as damages, the difference between the tariff rate charged and the reasonable rate established by the Commission. No distinction in principle can be predicated upon the fact that, in the case under consideration by the Supreme Court, the action was based directly upon an alleged violation of section 2 of the Act, prohibiting the giving by a carrier of rebates, etc., as therein defined, and as to which no complaint to the Commission was required before bringing a suit. Nor

can any distinction be based upon the bringing of that suit under section 8, instead of under section 16.

In the present case, the action is brought under the provisions of section 16, authorizing a suit for damages, after complaint to and an order made by the Interstate Commerce Commission, but it is a private suit for damages, and not for a penalty, and, as expressly enjoined by the Act, is to be proceeded in "in all respects like other civil suits for damages." Otherwise, it would not comply with the mandate of the seventh amendment to the Constitution. There can be no question, therefore, but that what is said by the Supreme Court in regard to the nature of the damages recoverable in a suit before it, is applicable to the damages sought to be recovered in this suit.

We again quote somewhat at length the language of Mr. Justice Lamar in this respect. Referring to the case of Parsons v. Railway, 167 U. S. 460, 17 Sup. Ct. 892, 42 L. Ed. 231, and quoting therefrom, with approval, the following language:

"Before any party can recover under the Act, he must show not merely the wrong of the carrier, but that that wrong has in effect operated to his injury."

In the case before us, the wrong of the carrier is conclusively shown by the administrative finding of the Commission. He then says:

"Congress had not then and has not since given any indication of an intent that persons not injured might, nevertheless, recover what, though called damages, would really be a penalty, in addition to the penalty payable to the government. * * *

"The statute gives a right of action for *damages* to the *injured* party, and by the use of these legal terms clearly indicated that the damages recoverable were those known to the law and intended as compensation for the injury sustained. It is elementary that in a suit at law both the fact and the amount of the damage must be proved. And although the plaintiff insists that in all cases like this the fact and amount of the pecuniary loss is matter of law, yet this contention is not sustained by the language of the act, nor is it well founded in actual experience, as will appear by considering several usual and every-day instances suggested by testimony in this record. For example:

"If plaintiff and one of the favored companies had both shipped coal to the same market on the same day, the rebate on contract coal may have given an advantage which may have prevented the plaintiff from selling, may have directly caused it expense, or may have diminished or totally destroyed its profits. The plaintiff, under the present statute in any such case being then entitled to recover the full damages sustained; but the plaintiff may have sold at the usual profit all or a part of its 40,000 tons at the regular market price, the purchaser, on his own account, paying freight to the point of delivery. In that event not the shipper, but the purchaser, who paid the freight would have been the person injured, if any damage resulted from giving rebates. To say that the seller and buyer, shipper and consignee, could both recover, would mean that damages had been awarded to two where only one had suffered; * * * for it [the plaintiff] argues that, whenever it showed that a lower rate had been charged on contract coal sold in 1899, it was entitled to recover the same rate on shipments made by it to the same place on the same day in 1901, even though there had been no competition in the two sales, and without proof that there had been any fall in market prices, diminution in its profits, decrease in its business, or increase in its expenses. It claimed that it was a mere matter of mathematics, and that for every rebate on contract coal, plaintiff was entitled to a like reduction on every ton of its coal without further proof of damage or injury.

"6. To adopt such a rule and arbitrarily measure damages by rebates would create a legalized, but endless, chain of departures from the tariff; would extend the effect of the original crime; would destroy the equality and certainty of rates; and, contrary to the statute, would make the carrier liable for damages beyond those inflicted, and to persons not injured. The limitation of liability to the persons damaged, and to an amount equal to the injury suffered, is not out of consideration for the carrier who has violated the statute. On the contrary, the Act imposes heavy penalties, independent of the amount of rebate paid, and as each shipment constitutes a separate offense, the law, in its measure of fine and punishment, is a terror to evil doers. But for the public wrong and for the interference with the equal current of commerce these penalties or fines were made payable to the government. If by the same act a private injury was inflicted, a private right of action was given. But the public wrong did not necessarily cause private damage, and when it did, the pecuniary loss varied with the character of the property, the circumstances of the shipment, and the state of the market; so that, instead of giving the shipper the right to recover a penalty fixed in amount or measure, the statute made the guilty carrier liable for the full amount of damages sustained,—whatever they might be, and whether greater or less than the rate of rebate paid.

"7. This conclusion, that the right to recover is limited to the pecuniary loss suffered and proved, is demanded by the language of the statute, the construction put upon it years ago in the Parsons Case, and is the view taken in the only other case we find in which this question, under the Act to Regulate Commerce, has been construed. In Knudsen v. Michigan Central R. R., 148 Fed. 974 [79 C. C. A. 52], it was said by the Circuit Court of Appeals for the Eighth Circuit that to 'support a recovery under this section there must be a showing of some specific pecuniary injury. A cause of action does not necessarily arise from those acts or omissions of a common carrier that may subject it to a criminal prosecution by the government or to corrective or coercive proceedings at the instance of the Commission.'"

[4] In conclusion, we are of opinion, first, that there were no sufficient findings of fact in these reports of the Commission, as required by the statute; second, that if any of the statements in the first report could properly be considered as findings of fact, within the meaning of the statute, so as to make such findings *prima facie* evidence of the facts found, they were not sufficient to support the plaintiffs' claim or make out even a *prima facie* case for damages. The plaintiffs were not bound to rely upon *prima facie* evidence. The whole field of inquiry was open to them,—the production of such testimony as could be found bearing upon the issue, and notably the additional evidence referred to by the Commission in its second report. Failing to produce evidence *prima facie* sufficient to show actual damage suffered, and the amount thereof, the defendants were not put to a reply, and the plaintiffs must suffer the consequence of their default.

We think for the reasons stated, the assignment of error, based on the exception to the refusal of the court to give binding instructions in favor of the defendant companies, must be sustained, and the judgment of the court below reversed. And it is so ordered.