SOUTHERN PAC. CO. et al. v. GOLDFIELD CONSOL. MILLING & TRANSPORTATION CO.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1915. Rehearing Denied March 8, 1915.)

No. 2467.

1. COMMERCE ☞91, 95—INTERSTATE COMMERCE—UNREASONABLE RATES—REPARATION—ENFORCEMENT.

Where plaintiff paid freight at an alleged unreasonable rate, reparation, applied for and awarded by the Interstate Commerce Commission, was not a penalty, but could only be recovered as damages, and, on the carrier's refusal to. pay, an action at law was essential for the recovery thereof, as authorized by Interstate Commerce Amendatory Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (Comp. St. 1913, § 8584), providing that such actions shall proceed in all respects like other civil suits for damages, except that on the trial thereof the findings and order of the commission shall be prima facie evidence of the facts therein stated.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 143, 145; Dec. Dig. ☞91, 95.]

2. COMMERCE ☞94—INTERSTATE COMMERCE—REPARATION—COMPLAINT.

Where a complaint against an interstate carrier to recover for freight paid at an unreasonable rate set forth at length all the facts stated in the findings of the Interstate Commerce Commission, including a finding that the rate was unreasonable, and that plaintiff was entitled to recover reparation in the sum of $447, together with interest, etc., it was not de-

fective, because it did not expressly allege that plaintiff had been dam-- aged by the excessive rate.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. ☞94.]

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action at law by the Goldfield Consolidated Milling & Transportation Company against the Southern Pacific Company and the Tonopah & Goldfield Railroad Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Hugh H. Brown, of Tonopah, Nev., and C. W. Durbrow, of San Francisco, Cal. (Wm. F. Herrin, of San Francisco, Cal., of counsel), for plaintiffs in error.

Brown & Baer, of San Francisco, Cal. (Charles L. Brown, of San Francisco, Cal., of counsel), for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. The defendant in error on the 9th day of August, 1912, filed with the Interstate Commerce Commission a complaint against the Chicago & Erie Railroad Company et al., alleging that it had been charged an unreasonable rate for the transportation of a car load of steel window sash from Youngstown, Ohio, to Goldfield, Nev., and asking reparation; it being alleged in the complaint that the rate of $3.44 per 100 pounds, published and charged by the carriers for transporting that commodity between the points mentioned, was unreasonable, and praying that an order be entered by the Commission declaring $1.95 a reasonable rate for such service, and that the carriers be required to assess their charge on that basis. A hearing of the matter was duly had before the Commission, which thereafter rendered its decision holding that the rate complained of was unreasonable, and that the rate of $1.95 was a reasonable rate for the service, and entered an order directing the carriers to publish the latter rate for such transportation, and, finding that the complainant in that proceeding was entitled to an award for reparation against the Southern Pacific Company and the Tonopah & Goldfield Railroad Company in the sum of $447, with interest at the rate of 7 per cent. per annum from November 25, 1910, ordered the said named railroad companies to pay to the said Goldfield Consolidated Milling & Transportation Company, on or before July 1, 1913, the said sum of money, with such interest.

The Commission having denied a petition for a rehearing that was filed by the carriers, and the plaintiffs in error here having refused to make the payment as ordered upon demand duly made by the present defendant in error, the latter commenced this suit in the court below to recover the amount of $447, with interest thereon at the rate of 7 per cent. per annum, so awarded by the Commission, together with attorney's fees in the sum of $250.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The answer filed in the court below by the plaintiffs in error to the suit so brought denied that the sum of $250 is a reasonable attorney's fee for the bringing and prosecution of such suit, and set up, among other things, that no evidence was introduced or offered before the Commission, and none heard by it, sufficient to justify its findings and decision, specifying in the answer the various particulars in which the evidence was claimed to be insufficient, and also set up various circumstances and facts which they contended justified the charge that had been published by the carriers and collected for the transportation of the commodity in question.

The case coming on for trial before the court below—a jury having been duly waived by the parties—the plaintiff in the cause introduced in evidence the findings, conclusion, and order of the Interstate Commerce Commission, and also Exhibits Nos. 2, 3, 4, 5, and 6, set out in the bill of exceptions. Upon the conclusion of the plaintiff's case, the counsel for the defendants announced to the court:

"We have no evidence to offer at all, your honor, with the exception that I ask to have the entire transcript and exhibits which were before the Commission introduced and considered in evidence in support of the allegations of our answer"

—which was agreed to. The case, being thus closed, was submitted to the trial court, which gave judgment in favor of the plaintiff in the action for the sum of $447, with interest thereon at the rate of 6 per cent. per annum from November 25, 1910, and for costs, together with an attorney's fee in the sum of $150. It is from that judgment that the present writ of error was taken.

The findings, conclusion, and order of the Commission (omitting formal parts) are as follows:

"In October, 1910, complainant shipped over defendants' lines from Youngstown, Ohio, to Goldfield, Nev., a car load of steel window sash, and parts, of the weight of 21,399 pounds, for which transportation charges were collected at a rate of $3.44 per 100 pounds, on a minimum of 30,000 pounds, amounting to $1,032. There was no joint through rate applicable to the traffic, and the charges were made up of a commodity rate of $1.30 from Youngstown, to Sacramento, Cal., and a class rate of $2.14 from Sacramento to Goldfield. At the time the shipment moved there was a published commodity rate of 65 cents per 100 pounds on wooden window sash in car loads from Sacramento to Goldfield, which rate is still in force. Complainant contends that the charges were unreasonable to the extent that they exceeded charges that would have accrued at a through rate of $1.95 per 100 pounds, made up of $1.30 to Sacramento and 65 cents thence to Goldfield, or, in other words, that the rate on steel window sash should not exceed the rate on wooden window sash.

"In transcontinental tariffs, steel sash and wooden sash are carried at the same car load rates, both west-bound and east-bound. Official Classification names each article fifth class, in car loads, and Southern Classification sixth class. Western Classification accords iron or steel window sash fourth class and wooden window sash fifth class. The former article loads heavier than the latter.

"Defendants say the wide difference in the rates from Sacramento to Goldfield is due to the fact that the wooden sash rate applies to forest products generally, including blinds, door sash, moldings, etc. Considering the two commodities from a transportation viewpoint, and the fact that both are carried at the same rates in transcontinental tariffs and in the Official and Southern Classifications, the explanation offered is not convincing.

"Upon the facts of record, we are of opinion, and find, that the rate from Sacramento to Goldfield, charged as part of the through rate from Youngstown to Goldfield, was unreasonable to the extent that it exceeded the rate contemporaneously in effect on wooden window sash in car loads, from and to the same points, and a rate not to exceed the wooden sash rate will be prescribed for the future.

"We further find that complainant made the shipment in accordance with the above statement of facts, and paid charges thereon at the rate herein found to have been unreasonable; that complainant has been damaged to the extent of the difference between the amount paid and the amount which it would have paid at a combination through rate of $1.95 per 100 pounds, made up of $1.30 to Sacramento, Cal., and 65 cents beyond, and that complainant is therefore entitled to an award of reparation against the Southern Pacific Company and Tonopah & Goldfield Railroad Company, in the sum of $447, with interest from November 25, 1910. An order will be entered accordingly. * * *

"It is ordered that defendants Southern Pacific Company and Tonopah & Goldfield Railroad Company be, and they are hereby, notified and required to cease and desist, on or before July 1, 1913, and for a period of two years thereafter to abstain, from charging, demanding, collecting, or receiving as a part of the through rate from Youngstown, Ohio, to Goldfield, Nev., their present rate for the transportation of steel window sash in car loads from Sacramento, Cal., to Goldfield, Nev., which rate is found in said report to be unreasonable.

"It is further ordered that said defendants Southern Pacific Company and Tonopah & Goldfield Railroad Company be, and they are hereby, notified and required to establish, on or before July 1, 1913, upon statutory notice to the Interstate Commerce Commission and the general public, by filing and posting in the manner prescribed in section 6 of the act to regulate commerce, and for a period of two years after said July 1, 1913, to maintain and apply to the transportation of steel window sash in car loads from Sacramento, Cal., to Goldfield, Nev., as part of the through rate from Youngstown, Ohio, to Goldfield, Nev., a rate not in excess of the rate contemporaneously in effect on wooden window sash in car loads from and to said points, which relation of rates is found in said report to be reasonable.

"And it is further ordered that said defendants Southern Pacific Company and Tonopah & Goldfield Railroad Company be, and they are hereby, authorized and directed to pay unto complainant, the Goldfield Consolidated Milling & Transportation Company, on or before July 1, 1913, the sum of $447, with interest thereon at the rate of 6 per cent. per annum from November 25, 1910, as reparation on account of a rate charged for the transportation of a car load of steel window sash and parts from Youngstown, Ohio, to Goldfield, Nev., which rate so charged has been found to have been unreasonable, as more fully and at large appears in and by said report of the Commission."

Exhibit 2, above referred to, is the order of the Commission denying the petition for a rehearing; Exhibit 3 is a statement of the bill of the shipment in question; Exhibit 4 is a comparative statement of commodity rates on iron or steel window sash in certain classification districts, including Chicago to Denver, Omaha to Denver, New Orleans to Denver, Denver to Falls City, Neb., Sacramento, Cal., to Goldfield, Nev., and Youngstown, Ohio, to Goldfield, which statement plainly shows discrimination against Goldfield; Exhibit 5 is a statement showing that steel window sash and wooden window sash were classified alike in various classification districts of the United States; and Exhibit 6 is a statement filed before the Interstate Commerce Commission by the claimant, setting forth its position with respect to the alleged unreasonableness of the rate in question, and pointing out the various

tariff references, and per cent. per ton per mile earnings which the claimant contended sustained its position in the premises.

It clearly appears from the exhibits that the Transcontinental Freight Bureau provides the same rate for both steel and wooden sash, while the rate charged by the plaintiffs in error on wooden window sash from Sacramento, Cal., to Goldfield, Nev., is 65 cents, against the rate on steel window sash between the same points of $2.14.

The only additional evidence introduced by either party before either the Interstate Commerce Commission or the court below is the testimony of the witness Bostwick, introduced by the plaintiffs in error, both before the Commission and the court below, in the endeavor to show that the difference in existing conditions in this Western Classification district were such as to justify the difference in the charge from Sacramento to Goldfield on the two classes of sash.

[1] It is entirely true that the reparation awarded the defendant in error by the Interstate Commerce Commission was not a penalty, but could only be recovered by it as damages growing out of the excess of charge by the carrier companies, and that in the event of the refusal of the latter to pay such damages an action at law was essential for the recovery thereof, which action, according to the express provision of section 5 of the amendatory act of June 29, 1906 (34 Stat. 590, c. 3591 [Comp. St. 1913, § 8584]), is required to "proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated," in which action the parties were manifestly entitled to a jury trial. In the present case, however, a jury trial was expressly waived by them and the cause tried before the court, as has been stated. Here, among the findings of fact made by the Commission is one to the effect that the defendant in error made the shipment in question in accordance with the specific facts set out in its findings and paid the charges thereon at the rate found by the Commission to have been unreasonable, and that the defendant in error was thereby—

"damaged to the extent of the difference between the amount paid and the amount which it would have paid at a combination through rate of $1.95 per 100 pounds, made up of $1.30 to Sacramento, Cal., and 65 cents beyond, and that complainant is entitled to an award of reparation against the Southern Pacific Company and Tonopah & Goldfield Railroad Company in the sum of $447, with interest from November 25, 1910."

The fact that the defendant in error was damaged in the particulars specified, as well as the extent of such damage, was therefore expressly found by the Commission in the present case; and that finding of facts, like all other facts found by it, is, by the Interstate Commerce Act of February 4, 1887, as amended by the acts of March 2, 1889, and June 29, 1906 (24 Stat. c. 104, 25 Stat. c. 382, and 34 Stat. c. 3591 [Comp. St. 1913, § 8584]), expressly made prima facie evidence. Being introduced by the plaintiff on the trial in the court below, and there being nothing in any of the other evidence given on the trial in conflict therewith, it must be here taken that the plaintiff in the case was damaged by the unlawful act of the defendants below, plain-

tiffs in error here, to the extent and in the amounts for which the court gave judgment—the statute expressly authorizing an attorney's fee for the plaintiff in the event of such action.

[2] It is true, as urged on behalf of the plaintiffs in error, that the complaint in the present case does not in terms allege that the plaintiff was "damaged"; but it does set forth at large all of the facts stated in the findings of the Interstate Commerce Commission, and among other things alleged as follows:

"That on the 9th day of August, 1912, and within two years from the date of said shipment and its cause of action accrued, this plaintiff, as complainant, instituted a certain proceeding before the Interstate Commerce Commission at Washington, D. C., and filed its complaint therein, whereby the plaintiff, as such complainant, attacked the rate above mentioned applied upon the movement of said steel window sash and parts as unreasonable, to the extent that said charges exceeded the charge that would have accrued on said shipment upon the basis of wooden window and sash. That said petition before the Interstate Commerce Commission was docketed as No. 5064, and that said complainant in said proceeding, in addition to attacking said rate as unreasonable, also asked that the said Commission order the defendants to make reparation to this plaintiff in the sum of four hundred and forty-seven ($447) dollars, together with interest thereon from November 25, 1910. That said defendants filed answers to said complaint before the Interstate Commerce Commission, and that issues were duly made and thereafter heard and tried, and that the said Interstate Commerce Commission thereafter, and upon the 8th day of April, 1913, duly decided said issue and filed its written opinion, being No. 2281, containing its conclusions and order, a copy of which is hereunto attached and marked 'Exhibit A' and made ɪa part of this complaint.

"That said report and order were thereupon forthwith duly served upon the defendants Southern Pacific Company and Tonopah & Goldfield Railroad Company, and that the said defendants and each of them have failed, neglected, and refused, and still fail, neglect, and refuse, to comply with and obey said order of said Commission and pay over to this complainant the said. sum of four hundred and forty-seven ($447) dollars, together with interest thereon from November 25, 1910, and that said sum of four hundred and forty-seven ($447) dollars, together with interest thereon, is still due, owing, and unpaid from the said defendants to this plaintiff.

"That the plaintiff has made demand upon the said defendants for the payment of said sum of four hundred and forty-seven ($447) dollars, together with interest thereon, but said demand has been refused. That said plaintiff is compelled to resort to this action for the collection of said sum as provided by law, and that a reasonable attorney's fee for the bringing, prosecuting, and maintaining of this action is the sum of two hundred and fifty ($250) dollars."

The prayer is as follows:

"Wherefore plaintiff prays judgment in favor of the plaintiff, Goldfield Consolidated Milling & Transportation Company, against the defendants Southern Pacific Company and Tonopah & Goldfield Railroad Company, for the sum of four hundred and forty-seven ($447) dollars, together with interest thereon at the rate of seven (7%) per cent. per annum from the 25th day of November, 1910, and for all costs of this action, and for the further and additional sum of two hundred and fifty ($250) dollars as and for an attorney's fee for the bringing, prosecuting, and maintaining of this action for the attorneys of record for the plaintiff herein, and for such other and further relief as may be just and proper in the premises."

It is thus seen that, while the word "damage" is not used in the complaint, the facts of the case are specifically alleged, as well as the plain-

tiff's right to reparation for the alleged wrongs committed by the defendants to the action, and a prayer for such reparation, the meaning of which includes "indemnification for loss or damage; satisfaction for any injury; amends." See the Century Dictionary and Cyclopædia.

We agree with the court below that the complaint is sufficient. In the case of Lehigh Valley R. Co. v. Clark, 207 Fed. 717, 125 C. C. A. 235, so much relied upon by the plaintiffs in error, the complaint before the Interstate Commerce Commission involved the reasonableness of $2 per gross ton on pyrites cinder over the lines of the defendant companies, from Buffalo, N. Y., to points in the states of Pennsylvania and New Jersey. After a hearing on behalf of the respective parties the Commission found and adjudged that the rate of $2 was unreasonable, and fixed $1.45 as a reasonable and proper rate, but refused reparation to the complainant for the difference between the two rates that it had paid. Subsequently the Commission granted a rehearing upon the question of reparation only, and upon that question additional evidence was taken and the parties heard in oral argument thereon—the Commission concluding its second report in these words:

"We now find that the rate of $2 per gross ton, assessed and collected by the defendant on the shipments giving rise to complaint, was unjust and unreasonable to the extent that it exceeded the subsequently established rate of $1.45 per gross ton. Complainant is entitled to reparation on all shipments moving within the period of the statute of limitations."

In that case, as was expressly stated by the court (207 Fed. 727, 125 C. C. A. 245), there was no finding, as there is here, that the complainant was damaged, and consequently no finding as to the character or extent of any such damage—the court saying, among other things:

"In the second report, in which reparation was awarded, the Commission states that additional evidence was taken and the parties were heard in oral argument. What this additional evidence was, or what were the facts which the Commission found established by it, is nowhere stated in the report. So that we have nothing in the way of the findings of facts required by the statute upon which the award of reparation by the Commissioners was made. The second report does not state that reparation was awarded upon any supposed findings of fact in the first report. Nor could it well have been, because the Commission, though finding the charge made by the defendant companies to be unreasonable, distinctly declined to find that plaintiffs were entitled to reparation. It is reasonable to conclude, therefore, that the award of reparation was made upon the facts established by the additional evidence. Section 14 of the Interstate Commerce Act, as amended [Comp. St. 1913, § 8582], is peremptory in its requirement that in such case the Commission should include in their report the findings of fact on which their award was made. But even if the reference to the first report were sufficient to incorporate all its statements and supposed findings of fact in the second report, yet the facts of which those statements or findings are the prima facie evidence are wholly insufficient to support the plaintiffs' claim for damages."

The case of Pennsylvania Railroad Company v. International Coal Company, 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, involved various transactions growing out of illegal rebates paid by the railroad company. In the ascertainment of the damages claimed many questions and considerations entered. We therefore think that case inap-

plicable to the present one, where, as has been seen, there was but a single transaction, the illegality of which was determined by the Interstate Commerce Commission, which expressly found as a fact that the complainant was damaged in a certain specified sum, which finding is by the statute made prima facie evidence, and which evidence was in no respect overcome by any other proof made in the case.

The judgment is affirmed.