NEW YORK, N. H. & H. R. CO. et al. v. BALLOU & WRIGHT.

(Circuit Court of Appeals, Ninth Circuit. June 6, 1917.)

No. 2853.

1. COMMERCE ⬅95—FINDINGS OF INTERSTATE COMMERCE COMMISSION—CARRIAGE OF GOODS—OVERCHARGES.

Under Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (Comp. St. 1916, § 8563), providing that charges for the transportation of persons or property shall be reasonable and just; section 8 (Comp. St. 1916, § 8572), declaring, in case any common carrier subject to the provisions of the act shall do, cause to be done, or permit any matter or thing prohibited or declared to be unlawful, it shall be liable to the person or persons injured; and section 16 (Comp. St. 1916, § 8584), relating to findings by the Interstate Commerce Commission on the reasonableness of rates, and declaring that the findings and orders of the Commission shall be prima facie evidence of the facts therein stated—a finding by the Commission that the rate charged petitioner was unreasonable, and that petitioner was damaged to an amount stated, is prima facie correct.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145.]

2. CARRIERS ⬅202—CARRIAGE OF GOODS—RATES—DISCRIMINATION.

Where a railroad company exacted unreasonable freight rates, which were paid by petitioner, to whom merchandise was consigned, petitioner's recovery of damages on account of the unjust charges cannot be denied, because petitioner, in disposing of the merchandise, sold it for a price in excess of the factory list price, so as to cover the discrimination in charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906-915.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CARRIERS ⬬⟿202—CARRIAGE OF GOODS—UNREASONABLE RATES.
    The proper measure of damages suffered by one on account of the exaction of unreasonable freight charges is the difference between the unreasonable charges and reasonable charges.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915.]

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Petition by Ballou & Wright, a corporation, against the New York, New Haven & Hartford Railroad Company, a corporation, and others. There was a judgment for petitioner, and defendants bring error. Affirmed.

Action to recover damages sustained by reason of the exaction and collection of excessive freight rates upon certain carload shipments of motorcycles from Armory, Mass., to defendant in error, at Portland, Or. Judgment for petitioner. Respondents allege error.

H. A. Scandrett, of Chicago, Ill., and W. W. Cotton, Charles E. Cochran, and Arthur C. Spencer, all of Portland, Or., for plaintiffs in error.

Will H. Bard, of Portland, Or., and James E. Fenton, of San Francisco, Cal., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. 1. This is an action brought by the petitioner, a corporation, under section 16 of the act to regulate commerce, approved February 4, 1887 (24 Stat. 379), as amended by Act March 2, 1889, c. 382, § 5, 25 Stat. 859, Act June 29, 1906, c. 3591, § 5, 34 Stat. 590, and Act June 18, 1910, c. 309, § 13, 36 Stat. 554 (Comp. St. 1916, § 8584), to recover from the respondents, as common carriers engaged in interstate commerce, damages awarded to the petitioner by the Interstate Commerce Commission on account of unjust and unreasonable rates charged and collected from the petitioner for the transportation of certain specified quantities of motorcycles in carload lots from Armory, Mass., to Portland, Or.

It is alleged by the petitioner, in substance, that upon a hearing before the Interstate Commerce Commission it was found that the commodity rate charged and collected by the respondents from the petitioner for services rendered in the transportation of certain shipments of motorcycles was unjust, unreasonable, and excessive to the extent that it exceeded the first-class rate in effect at the time the shipments were made, and that the petitioner was damaged to the extent of the difference between the commodity rate charged and collected and the first-class rate in effect at that time, and that the petitioner was entitled to an award of reparation for such difference; that thereafter the Interstate Commerce Commission made an award to the petitioner in reparation of such damages in several specified sums, amounting in the aggregate to $828.13, with interest from January 1, 1913, and apportioned the same between the respondents over whose lines the said respective shipments were carried, and directed that the said several

sums, with interest, as apportioned, be paid to the petitioner by the respondents on or before the 1st day of October, 1914; that, the respondents having refused to pay the award, petitioner brought this suit to recover the damages sustained by it in consequence of the violation of the provisions of the act to regulate commerce, together with interest and reasonable attorney's fees, costs, and disbursements.

The petitioner set forth in its complaint in detail the amounts of the various overcharges, alleging, in substance, that the commodity rate of $4 per 100 pounds charged and collected by the respondents was unjust, unreasonable, and excessive, and that the first-class rate in effect at the time the shipments were made should have been applied to motorcycles in carload lots, and that by reason of the said unjust, unreasonable, and excessive rate charged and collected for the service rendered the petitioner had suffered and sustained damages to the extent of the difference between the commodity rate charged and collected and the reasonable amount which petitioner would have paid on carload lots, based upon the first-class rate in effect at that time.

The respondents answered the complaint, and, in substance, denied that the commodity rate charged and collected was unjust, unreasonable, or excessive, and denied that the first-class rate in effect at the time the shipments were made was just and reasonable, or that the same should have been applied to motorcycles in carload lots; and, for a further and separate answer and defense, the respondents alleged, in an amended answer, in substance, that the petitioner in the management of its business sold each motorcycle to the trade at a retail price of $15 in excess of the factory list price, which said sum was added to cover and did cover the difference in freight charges sought to be recovered as damages by the petitioner.

The petitioner interposed a demurrer to this further and separate answer and defense; but the court suspended a ruling on this demurrer until after the testimony had been taken. Thereupon the petitioner filed a reply, denying the matters and things contained in the further and separate answer; and, a jury being waived, the proceedings before the Interstate Commerce Commission, including the report of the Commission and the award authorizing the reparation, were offered in evidence, and the petitioner offered evidence as to what should be a reasonable attorney's fee in the event it should prevail in the action. It was thereupon stipulated between the parties that the only question for the determination of the court was the reasonableness or unreasonableness of the rate charged and collected, and the measure of damages, if any, sustained by the petitioner. The court sustained the demurrer of the petitioner to the further and separate answer and defense of the respondents, and made findings of fact and conclusions of law, and entered a judgment in favor of the petitioner and against the respondents in accordance with the order of reparation of the Interstate Commerce Commission, together with attorney's fees and costs.

[1] The law provides that:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property * * * shall be reasonable and just; and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful." Section 1, Act Feb. 4, 1887 (24 Stat. 379).

It is also provided:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, * * * such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."   Section 8, Act Feb. 4, 1887 (24 Stat. 382).

The Interstate Commerce Commission has found as a fact, on testimony before it, that the rate charged the petitioner was unreasonable, and that the petitioner had been damaged thereby. It also found the amount of reparation due thereon, on the basis of the Commission's decision, and the Commission thereupon ordered and required that, as reparation on account of the unreasonable rate charged, the respondents should pay to the petitioner the specific sums amounting in the aggregate to $828.13.   The report of the Commission containing these findings of fact and orders is prima facie evidence of the matters therein stated.   Section 16, Act Feb. 4, 1887 (24 Stat. 384).

The court below also found as a fact that the petitioner had been damaged in an amount equal to the difference between the amounts charged and collected on the several shipments made by the petitioner and the amounts it would have paid at the first-class rate contemporaneously in effect, amounting in the aggregate to $828.13.   In the case of Southern Pacific Co. v. Goldfield Consolidated Milling & Transportation Co., 220 Fed. 14, 18, 135 C. C. A. 590, 594, this court had before it this identical question, and Judge Ross, rendering the opinion of the court, said:

"The fact that the defendant in error was damaged in the particulars specified, as well as the extent of such damage, was therefore expressly found by the Commission in the present case; and that finding of facts, like all other facts found by it, is, by the Interstate Commerce Act of February 4, 1887, as amended by the acts of March 2, 1889, and June 29, 1906 (24 Stat. c. 104, 25 Stat. c. 382, and 34 Stat. c. 3591 [Comp. St. 1913, § 8584]), expressly made prima facie evidence. Being introduced by the plaintiff on the trial in the court below, and there being nothing in any of the other evidence given on the trial in conflict therewith, it must be here taken that the plaintiff in the case was damaged by the unlawful act of the defendants below, plaintiffs in error here, to the extent and in the amounts for which the court gave judgment."

[2] 2. But in the present case the respondents set up in their amended answer, as a further and separate defense, that the petitioner sold each motorcycle to the trade at a retail price of $15 in excess of the factory list price; that said sum was added to cover, and did cover, the difference in freight charges sought to be recovered as damages by the petitioner. To this further and separate defense the petitioner demurred, and the court sustained the demurrer. Upon the trial the court also refused to permit testimony in support of this separate defense. This brings us to the question, as one of law, which may be concretely stated in this form: Can petitioner be deprived of the reparation provided by law because in the petitioner's business the freight paid was

entered as an element of cost and was passed along to the ultimate purchaser in the selling price?

In Burgess v. Transcontinental Freight Bureau, 13 Interst. Com. Com'n, 668, 680, decided in 1908, the Interstate Commerce Commission had before it this identical question, which the Commission disposed of in the following language:

"These complainants were shippers of hardwood lumber to this destination, and they were entitled to a reasonable rate from the defendants for the service of transportation. An unreasonable rate was in fact exacted. They were thereby deprived of a legal right, and the measure of their damage is the difference between the rate to which they were entitled and the rate which they were compelled to pay. If complainants were obliged to follow every transaction to its ultimate result, and to trace out the exact commercial effect of the freight rate paid, it would never be possible to show damages with sufficient accuracy to justify giving them. Certainly these defendants are not entitled to this money which they have taken from the complainants, and they ought not to be heard to say that they should not be required to refund this amount, because the complainants themselves may have obtained some portion of this sum from the consumer of the commodity transported."

In Nicola, Stone & Myers Co. v. L. & N. R. R. Co., 14 Interst. Com. Com'n, 199, 207, the claims against the carriers involved reparation on shipments of lumber between points of origin and destination, and opposition to the claims of the shippers of such lumber on the ground that in the general course of the lumber business the lumber is ordinarily sold by the manufacturer or millman f. o. b. cars at the mill at prices taking into account the amount of the freight which must be paid for transportation from that point to destination; that the purchaser to whom it is consigned protects himself against the injury caused by the excess amount of the rate by adding to the price of the lumber, thus imposing the burden or injury upon the consumer; and that if any one of the parties is entitled to a refund it was the latter. This claim was rejected; Commissioner Clements, speaking for the Commission, giving this reason:

"The suggestion * * * would, if followed, lead the Commission away from the direct results of the act of the carrier in the establishment and exaction of an unjust rate into the domain of indirect and remote consequences, and perhaps into questions of equity between the vendor and vendee of the lumber. The vendor sells the lumber for the best price he can get, and the vendee buys at as low a figure as he can. The price which the one is able to get and the other must pay is of necessity fixed or controlled by many influences, including, of course, the transportation charges. * * * We do not understand that the act to regulate commerce contemplates or authorizes the application by the Commission of its provisions in respect to reparation on account of unreasonable rates in such manner. Whatever a court of equity might be able to do and be justified in doing in dealing with the relations between the vendor and vendee of the lumber in reference to the rates or other considerations, the Commission is confined in the making of awards for reparation to the injury or damage sustained by those who are the real and substantial parties at interest in the transaction in which such transportation charges have been made. The reparation is due to the person who has been required to pay the excessive charge as the price of transportation. It follows that we must, in making orders of reparation in these cases, upon proper proof of the shipments, make such orders in favor of those who paid the charges as freight charges, or on whose account the same were paid, and who were the true owners of the property transported during the period of transportation."

In Kindelon v. Southern Pacific Company, 17 Interst. Com. Com'n, 251, 254, the Commission again considered this question, saying:

"The defendants further contend that the complainants herein have not shown that they were damaged. It is well settled that reparation in any given case is due the person who has been required to pay an unlawful charge as the price of transportation. The shipper who has been charged an unlawful rate, and who is the owner of goods transported, is entitled to repayment without the imposition of the impossible task upon the Commission of ascertaining the ultimate profits accruing from the business of the shipper. Moreover, the owner of the freight, who has been required to pay an unreasonable rate, is entitled, upon proper complaint and showing, to reparation, irrespective of the profits accruing from his business."

The case of Ballou & Wright v. N. Y., N. H. & H. R. R. Co., 34 Interst. Com. Com'n, 120, 121, was between the same parties, and the same questions were involved as in the present case. In that case the Commission said:

"The case is similar to Ballou & Wright v. N. Y., N. H. & H. R. R. Co., Docket No. 5616 [the present case], in which the rates applied on similar shipments were found unreasonable, and reparation was awarded. A copy of the transcript of testimony in that case was introduced in evidence in this proceeding, with certain additional evidence adduced to establish the fact of the shipments here involved. The single question contested is complainant's right to reparation, defendants showing that complainant added an arbitrary sum of $15 to the sale price of each motorcycle to cover freight and local drayage charges, from which they argue that complainant suffered no damage and therefore is not entitled to reparation. * * * Carriers cannot be heard to say that reparation for the exaction of unreasonable freight rates should be denied because the shipper or consignee, from whom the same has been collected, has on that account secured a higher price for the commodity from his purchaser."

[3] 3. In the case of Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412, 428, 35 Sup. Ct. 328, 335 (59 L. Ed. 644, Ann. Cas. 1916B, 691), the Supreme Court of the United States, discussing the force and effect to be given the reports and orders of the Interstate Commerce Commission upon a question of this character arising upon a claim against the carrier for unreasonable rates and unjust discrimination, said:

"But it is said that the reports disclose that the Commission applied an erroneous and inadmissible measure of damages, and therefore that no effect can be given to the award. What the reports really disclose is that the Commission, 'upon consideration of the evidence adduced upon the hearing upon the question of reparation,' found (a) that by reason of the unjust discrimination resulting from giving the rebate to the Lehigh Valley Coal Company Meeker & Co. were 'damaged to the extent of the difference' between what they actually paid from November 1, 1900, to August 1, 1901, and what they would have paid, had they been dealt with on the same basis as was the Coal Company; and (b) that by reason of being charged an excessive and unreasonable rate from August 1, 1901, to July 17, 1907, Meeker & Co. were 'damaged to the extent of the difference' between what they actually paid and what they would have paid had they been given the rate which the Commission found would have been reasonable. In this we perceive nothing pointing to the application of an erroneous or inadmissible measure of damages. The Commission was authorized and required by section 8 of the act to regulate commerce to award 'the full amount of damages sustained,' and that, of course, was to be determined from the evidence. If it showed that the damages corresponded to the rebate in one instance and to the overcharge in the other, the claimant was entitled to an award upon that basis. The case of Pennsylvania Railroad v. International Coal Mining Co., 230

868 242 FEDERAL REPORTER

U. S. 184 [33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315], is cited as holding otherwise, but it does not do so. There a shipper, without proving that he sustained any damages, sought to recover from a carrier for giving a rebate to another shipper, and this court, referring to section 8, said (230 U. S. 203, 33 Sup. Ct. page 898, 57 L. Ed. 1446, Ann. Cas. 1915A, 315): 'The measure of damages was the pecuniary loss inflicted on the plaintiff as the result of the rebate paid. Those damages might be the same as the rebate, or less than the rebate, or many times greater than the rebate; but unless they were proved they could not be recovered. Whatever they were they could be recovered.' There is nothing in either report of the Commission which is in conflict with what was said in that case. On the contrary, the plain import of the findings is that the amounts awarded represent the claimant's actual pecuniary loss; and, in view of the recital that the findings were based upon the evidence adduced, it must be presumed, there being no showing to the contrary, that they were justified by it."

The Interstate Commerce Commission in that case had found that, by reason of being charged an excessive and unreasonable rate, the shipper had been damaged to the extent of the difference between what it actually paid and what it would have paid, had it been given the rate which the Commission found would have been reasonable. Against this report, the carrier contended that the shipper had failed to prove by competent evidence that it had sustained damage, and that the measure of damages, if any, should have been the loss to the shipper as the result of the discrimination or unreasonable rate. But the Supreme Court could find nothing in the report of the Commission in that case pointing to the application of an erroneous or inadmissible measure of damages in favor of the shipper, and neither can we find in this case anything pointing to an erroneous or inadmissible measure of damages in favor of the shipper.

The judgment of the lower court is affirmed, with attorney's fee in favor of the defendant in error allowed at $150, to be taxed as part of its costs upon this writ of error.