FIREPROOF STORAGE CO. v. HINES, Director General of Railroads, et al.

(District Court, E. D. Washington, N. D. October 29, 1919.)

No. 3264.

RAILROADS ⊂⇒81—LEASE OF RIGHT OF WAY; RIGHT OF WAREHOUSEMAN TO SUE FOR CANCELLATION.

A Washington corporation, which maintained a warehouse in the city of Seattle, cannot maintain a suit against an interstate carrier and those engaged in interstate commerce allowed by the carrier to erect warehouses on portions of its right of way, to cancel such leases or privileges, on the ground that they were granted in violation of the Interstate Commerce Act; the damage being too remote for legal redress.

In Equity. Suit by the Fireproof Storage Company against Walker D. Hines, Director General of Railroads, and others. On motion to dismiss. Motion granted.

Oscar Cain, of Spokane, Wash., for plaintiff.

Cannon & Ferris, of Spokane, Wash., for defendants.

RUDKIN, District Judge. The case made by the amended complaint is substantially this: The plaintiff, a corporation organized under the laws of this state, is the owner of a lot in the city of Spokane immediately adjacent to the tracks of the railway company, upon which is erected a three-story brick building suitable for warehouse purposes. The Northern Pacific Railway Company is a corporation organized and existing under the laws of the state of Wisconsin, engaged in interstate commerce between the several states. The railway company owns a right of way through the city of Spokane approximately 200 feet in width, and has erected and permitted others to erect buildings suitable for warehouse purposes, and has leased its property for a mere nominal rental to persons engaged in interstate commerce, to the great and irreparable damage and injury of other persons engaged in the like commerce and unable to secure the benefits and privileges of such leases, and of other owners of warehouses and warehouse property, including the plaintiff. The defendants, other than the railway company and the Director General, hold leases of property on and along the right of way of the railway company, such as those above described. Such leases are unlawful and void, and their maintenance and existence against public policy for the following reasons:

"(1) That they operate as a restraint of trade. (2) That they give an unlawful preference to persons receiving the benefit of same. (3) That they are intended as and amount to a rebate to shippers receiving the benefit thereof. (4) That they are an unjust discrimination against other owners of warehouse property and other shippers in interstate commerce not receiving the benefit thereof."

The relief sought is that these several leases be decreed null and void, and that the defendants be enjoined and restrained from their further continuance, and for general relief.

A motion to dismiss has been interposed in behalf of the defendants for want of sufficient facts. The question presented is: Does the

amended complaint state a cause of action in favor of the plaintiff? Or, in other words, has the plaintiff any standing in a court of equity to question the validity of the leases or entitle it to the relief demanded?

It was conceded on the argument that if private parties owned the warehouses and warehouse sites along the right of way, and gave leases for a more nominal consideration, the plaintiff would not be heard to complain, although such a course of dealing would have the same effect upon the plaintiff and its property rights as if pursued by the railway company. It is claimed, however, that, inasmuch as the railway company is a corporation engaged in interstate commerce, the granting of such leases or privileges is a violation of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379), and that a different rule should obtain. Such a distinction no doubt exists, but is it not a distinction without a difference? In Roddy v. Missouri Pac. R. Co., 104 Mo. 234, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333, the court said:

"The right of a third party to maintain an action for injuries resulting from a breach of a contract between two contracting parties has been denied by the overwhelming weight of authority of the state and federal courts of this country and the courts of England. To hold that such actions could be maintained would not only lead to endless complications, in following out cause and effect, but would restrict and embarrass the right to make contracts by burdening them with obligations and liabilities to others, which parties would not voluntarily assume. * * * The rule is put upon two grounds, either of which is unquestionably sound. One ground is given by the court in the opinion in Winterbottom v. Wright, as follows: 'If we were to hold that plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty.' The other ground is thus stated in the New Jersey case above cited: 'The object of parties in inserting in their contracts specific undertakings with respect to the work to be done is to create an obligation inter sese. These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third persons can acquire a right in a contract, in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts.' Plaintiff, not being a party to the contract, cannot maintain this action on account of injuries, resulting from any breach of duty defendant owed Pickle, arising purely out of the terms of the contract between them."

The Roddy Case was cited with approval by the Supreme Court of this state in Ninneman v. Fox, 43 Wash. 43, 86 Pac. 213, and if a third party cannot complain of a breach of contract between strangers, why should he be permitted to complain of performance? It was further held in the case last cited that it was immaterial whether the act complained of was a tort or a mere breach of contract, quoting with approval from Connecticut Mut. Life Ins. Co. v. New York, etc., R. Co., 25 Conn. 265, 65 Am. Dec. 571, as follows:

"An individual slanders a merchant and ruins his business; is the wrongdoer liable to all the persons who, in consequence of their relations by contract to the bankrupt, can be clearly shown to have been damnified by the bankruptcy? Can a fire insurance company, who has been subjected to loss by the burning of a building, resort to the responsible author of the injury, who had no design of affecting their interest, in their own name and right?

Such are the complications of human affairs, so endless and far-reaching the mutual promises of man to man, in business and in matters of money and property, that rarely is a death produced by human agency, which does not affect the pecuniary interest of those to whom the deceased was bound by contract. To open the door of legal redress to wrongs received through the mere voluntary and factitious relation of a contractor with the immediate subject of the injury would be to encourage collusion and extravagant contracts between men, by which the death of either through the involuntary default of others might be made a source of splendid profits to the other, and would also invite a system of litigation more portentous than our jurisprudence has yet known. So self-evident is the principle that an injury thus suffered is indirectly brought home to the party seeking compensation for it that courts have rarely been called upon to promulgate such a doctrine."

In New York, N. H. & H. R. Co. v. Ballou & Wright, 242 Fed. 862, 155 C. C. A. 450, it was held by the Circuit Court of Appeals for this circuit (quoting from syllabus) :

"Where a railroad company exacted unreasonable freight rates, which were paid by petitioner, to whom merchandise was consigned, petitioner's recovery of damages on account of the unjust charges cannot be denied, because petitioner, in disposing of the merchandise, sold it for a price in excess of the factory list price, so as to cover the discrimination in charges."

That case was cited with approval by the Supreme Court of the United States in Southern Pac. Co. v. Darnell-Taenzer Co., 245 U. S. 531–535, 38 Sup. Ct. 186, 62 L. Ed. 451; the court holding as follows (again quoting from syllabus) :

"The fact that one who paid unreasonable freight charges has shifted the burden by collecting from purchasers of the goods does not prevent him from recovering the overpayments from the carrier, under an order of reparation made by the Interstate Commerce Commission. He is the proximate loser; his cause of action accrues immediately, without waiting for later events; the purchaser, lacking privity, cannot recover the illegal profits from the carrier, and, practically, to follow each transaction to its ultimate result would be endless and futile."

Yet the damages to the purchaser in these cases would seem to be more certain and less remote than the damages claimed or alleged by the plaintiff in this case. Such was also the view of the Interstate Commerce Commission in the case of Pittwood v. Northern Pacific Ry. Co., 51 Interst. Com. Com'n R. 535. Pittwood, who appears to have been the predecessor in interest of the present plaintiff, filed a complaint before the Commission on the 26th day of June, 1917, claiming an award of damages for the same wrongful acts here complained of, and it was held by that body that a warehouse owner is not entitled to recover damages for depreciation in the rental value of his property as a result of leases by a railroad company of similar property at nominal rentals to shippers. Whether the latter decision has any binding force beyond the high authority of the Commission itself I need not inquire, because the conclusion there reached is in entire harmony with my own views.

For the reasons thus stated, I am satisfied that the plaintiff has no standing in a court of law to recover damages, or in a court of equity to annul or interfere with the private contracts of others, and the motion to dismiss the amended complaint is accordingly granted.