KNUDSEN–FERGUSON FRUIT CO. v. MICHIGAN CENT. R. CO.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1906.)

No. 2,378.

1. CARRIERS—RAILROADS ENGAGED IN INTERSTATE COMMERCE—SCHEDULE OF RATES.

Semble, that a railroad company engaged in interstate commerce in its schedules of rates and classifications filed with the Interstate Commerce Commission pursuant to Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156], may state separately its rate for the carriage of ordinary commodities of a particular class and its charge for icing cars when commodities of the same class are of a character requiring to be shipped under refrigeration, and that its collection of both charges when refrigeration is used is lawful, provided they are each reasonable and do not cover double compensation for the same service.

2. SAME—ACTION FOR DAMAGES BY SHIPPER—GROUNDS OF RECOVERY.

To support an action by a shipper against a carrier under section 8 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3159]), he must show either that there has been some unreasonable or excessive charge imposed or some unlawful discrimination practiced against him by which he has been pecuniarily damaged, and he cannot recover, on a merely technical construction of the law, because, in addition to the ordinary scheduled rate, an extra charge for icing service, also shown by the schedules, but separately, has been collected from him, where such charge is not shown to be unreasonable and has not been so held by the Interstate Commerce Commission.

In Error to the Circuit Court of the United States for the District of Minnesota.

The fruit company sued the Michigan Central Railroad Company to recover the sum of $27 claimed to have been unlawfully exacted for the icing of a car load of grapes shipped from Matawan, Mich., to Duluth, Minn., and the further sum of $500 as a reasonable attorney's fee. The grapes were transported over the Michigan Central Railroad from Matawan to Chicago, and thence over the Chicago, Milwaukee & St. Paul Railroad to Duluth. It was charged in the complaint that the railroad companies had duly filed their joint schedules of rates with the Interstate Commerce Commission, as required by the act to regulate commerce approved February 4, 1887 (Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156]), and the acts amendatory thereof, and that the rate specified in the schedules was 48 cents per 100 pounds of grapes for receiving, handling, transporting, caring for in transit, and safely delivering, when transported in car load lots, from Matawan, Mich., to Duluth, Minn., and that this rate purported to cover all charges of every kind and description, and that there was nothing in the schedules indicating an additional charge for icing in transit; that the defendant company entered upon the bill of lading as advance charges its proportion of the published through rate, and in addition thereto the sum of $27 for the icing of the car in which the grapes were shipped, and that when the car reached its destination at Duluth the plaintiff paid the entire amount of charges, but that the item in controversy was paid under protest and duress. It was further charged in the complaint that the exaction of the charge for icing or refrigeration was collected without warrant of law and contrary to the provisions of the acts to regulate commerce, and, further, that it was unjust and unreasonable. There were received in evidence at the trial copies of the documents filed with the Interstate Commerce Commission as required by the act of Congress. One was a schedule of class rates which showed the through rate from Matawan to Duluth for second-class freight to be 48 cents per 100 pounds. This schedule contained a reference to the official classification. The latter, also filed with the commission, rated grapes in car load lots as second-class, and it contained an express provision that grapes and certain other fruits mentioned, not forwarded in pick-up cars, would be subject to an additional charge for icing at a minimum rate of $2.50 per ton of 2,000 pounds, fractions of a ton proportionately. Another contained special rulings affecting rates and official classification, and among them was a provision that the regular transportation rate did not include the charge for icing, and that for the latter service there would be imposed a minimum charge, upon shipments of grapes and other fruits, of $2.50 per ton, fractions proportionately. There was also a supplement to the sheet of special rulings which provided that "the rates herein named are subject to the weights, rules, conditions, and special instructions of the official classification," etc. All of these documents were connected together by appropriate references. It appeared from the evidence that by a general arrangement with the defendant company the refrigerator car in which the grapes were shipped was furnished and the icing done by another corporation, known as the "Armour Car Lines," and that the latter received from the defendant the charge for icing, which was billed as an advance charge and collected from the plaintiff by the connecting carrier at Duluth. The arrangement with the Armour Car Lines was such that no other refrigerator cars than those

belonging to it could be used in that traffic, and no one else could perform the icing service. At the conclusion of the evidence the trial court directed a verdict for the defendant, and, judgment being rendered accordingly, the plaintiff prosecuted this proceeding in error.

Roger S. Powell, for plaintiff in error.
C. A. Severance (Frank B. Kellogg and Robert E. Olds, on the brief), for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It should be observed at the outset that, although the plaintiff charged to the contrary in its complaint, the schedules published and on file with the Interstate Commerce Commission clearly showed that the specified rate for transportation of the grapes did not include, and was not intended to include, any charge for the icing of the car in transit. As shown by those schedules, there was a separate and distinct charge for icing in addition to the transportation rate. There was no proof at the trial that the charge collected for icing the refrigerator car in which the grapes were shipped was not a just and reasonable one for that particular service; nor proof that the freight rate from the point of shipment in Michigan to the destination in Minnesota which was charged and collected was not a just and reasonable rate for the transportation of the grapes, considering that service as separate and apart from the icing of the car. In other words, there was no proof that the sums of money exacted of and paid by the plaintiff were unjust and unreasonable charges for the services performed, whether regarded separately or in the aggregate. Again, there was no proof that the amounts demanded by the defendant and paid by the plaintiff were in excess of the rates and charges separately specified in the schedules filed with the commission; nor was it claimed that the railroad company was guilty of discrimination against the plaintiff by the performance for others of like and contemporaneous services for a less compensation.

We will assume, without considering the question, that the payment of the charge imposed for the icing of plaintiff's car of grapes was made under such circumstances as would entitle it to recover, did it otherwise have a cause of action, although in a case quite similar the Circuit Court of Appeals of the Seventh Circuit held that a payment by the same plaintiff was voluntarily made and that therefore there could be no recovery. Knudsen-Ferguson Fruit Company v. Railway Company (C. C. A.) 149 Fed. 973.

The plaintiff contends in effect that at common law it is the duty of a common carrier to provide adequate and suitable facilities for the transaction of the business in which it is engaged; that its duty of transportation comprises, not only the reception, the carriage, and the delivery of the property intrusted to it, but also that measure of protection and care during transit which its known characteristics demand; that when it holds itself out as a carrier of perishable commod-

ities, that can only be moved in refrigerator cars and under refrigeration, and invites and accepts traffic of that character, its duty keeps pace with the necessities of the business, and it must not only furnish suitable cars, but also the refrigeration of the same during transit; that, although the carrier leases the equipment or contracts with another corporation to furnish it and perform the incidental service, no new or independent element is injected into the relation between the shipper and the carrier that affects or impairs the full responsibility of the latter; that a charge for the necessary icing of a refrigerator car in which a perishable commodity is transported is a charge imposed for a service which it is the duty of the carrier to perform as part of its duty of transportation.

With the foregoing as a premise, the plaintiff further contends, in effect, that under the act to regulate commerce, approved February 4, 1887, and the amendments thereof, a transportation rate is single and indivisible, and embraces compensation for services of every kind and character that a railroad company is required to perform as a necessary incident to its contract of carriage, and that it was therefore unlawful for the defendant and its connecting carrier to segregate the rate and to specify in the tariff schedules a charge for the icing of refrigerator cars separately from the ordinary rate of transportation for second class freight from Matawan, Mich., to Duluth, Minn. It may well be admitted that, if a railroad company promulgates a rate which justly and reasonably compensates for the entire service it is required to perform, it cannot exact additional compensation by also naming one of the services which is an essential and integral part of its duty of transportation and affixing to it a distinct and separate rate. But assuming, without deciding, that a railroad company may be required to furnish ice for refrigerator cars and to maintain refrigeration during transit, it is not clear that a reasonable charge for that service may not be scheduled separately from the rate for ordinary transportation, provided, of course, no part of one is covered in the other.

Section 6 of the act of February 4, 1887, provides:

"That every common carrier subject to the provisions of this act shall print and keep open to public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route. The schedules printed as aforesaid by any such common carrier shall plainly state the places upon its railroad between which property and passengers will be carried, and shall contain the classification of freight in force and shall also state separately the terminal charges and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates and fares and charges."

Provision is also made for the establishment of joint tariffs over continuous lines or routes operated by more than one carrier and the filing of the same with the commission, and that:

"It shall be unlawful for any common carrier, party to any joint tariff, to charge, demand, collect or receive from any person or persons a greater or less compensation for the transportation of persons or property or for any services in connection therewith between any points as to which a joint rate, fare or charge is named thereon, than is specified in the schedule filed with the commission in force at the time."

It is also provided that:

"The commission may determine and prescribe the form in which the schedules required by this section to be kept open to public inspection shall be prepared and arranged and may change the form from time to time as shall be found expedient."

It at least seems to have been recognized by Congress that there may properly be rules or regulations which in some wise change, affect, or determine a part or the aggregate of the scheduled rates and charges, and there is nothing in the act clearly indicating that the rate or charge for every service must be included in one specified sum. It is true that in Covington Stockyards Co. v. Keith, 139 U. S. 128, 135, 11 Sup. Ct. 461, 463, 35 L. Ed. 73, the court said:

"A carrier of live stock has no more right to make a special charge for merely receiving or merely delivering such stock, in and through stockyards provided by itself, in order that it may properly receive and load, or unload and deliver, such stock, than a carrier of passengers may make a special charge for the use of its passenger depot by passengers when proceeding to or coming from its trains, or than a carrier may charge the shipper for the use of its general freight depot in merely delivering his goods for shipment, or the consignee of such goods for its use in merely receiving them there within a reasonable time after they are unloaded from the cars. If the carrier may not make such special charges in respect to stockyards which itself owns, maintains, or controls, it cannot invest another corporation or company with authority to impose burdens of that kind upon shippers and consignees. The transportation of live stock begins with their delivery to the carrier to be loaded upon its cars, and ends only after the stock is unloaded and delivered, or offered to be delivered, to the consignee, if to be found, at such place as admits of their being safely taken into possession."

But in that case, which arose before the passage of the interstate commerce act, the conduct of the railroad company that was complained of resulted in the imposition of a charge for the use of facilities for the unloading of live stock and delivery to the consignee in addition to the customary and legitimate charges for transportation which were assumed to be in themselves fully compensatory.

In Interstate Commerce Commission v. Railroad, 186 U. S. 320, 22 Sup. Ct. 824, 46 L. Ed. 1182, the court upheld the right of the railroads to make a distinct charge from the point of shipment to Chicago, and a separate terminal charge for delivery to the stockyards in that city, which was a point beyond their lines; but, because it did not arise in the case, the court declined to express an opinion upon the question whether the rule would be applicable to terminal services by a carrier upon its own line which it was obliged to perform as a necessary incident to its contract to carry.

In Walker v. Keenan, 19 C. C. A. 668, 73 Fed. 755, the court, in discussing the Keith Case, said there was no reason why the compensation of a carrier should not be apportioned if the public convenience were subserved thereby, but that since the passage of the interstate commerce law the apportionment should be specified in the tariff schedules for the information of shippers.

So far as the accomplishment of the great purposes of the interstate commerce act is concerned, it would not seem to be very material whether charges for icing are fixed at a specified rate per ton of ice furnished and therefore separately stated in the schedules, or measured

according to the weight of the commodity subject to refrigeration and the distance of transportation, in which event they might be more easily covered into the transportation rate. The former method would probably result in a closer approximation of charge imposed to value of service performed, and be more adjustable to the variable conditions of the seasons and the demands of the shippers, while the latter might the better conduce to simplicity in the schedules. Which should be adopted would seem to be a question of practice and expediency, rather than one of law.

The Interstate Commerce Commission, not considering that the question was foreclosed by any provision of the act of Congress, has thus expressed its views:

"There are at least three methods which may be adopted by the carrier in imposing such charges. It may charge for the ice actually used at so much per ton; it may charge for the service of refrigeration at so much per car, whatever the quantity of ice consumed may be; or it may charge at a rate by the hundred pounds, when property moves under refrigeration. All these different systems have their advantages and disadvantages. Some witnesses were in favor of one system, some of another. It is not within the province of this commission to prescribe the method which shall be adopted, so long as the price charged the shipper is fair."

This was said in a cause pending before the commission involving the very practice now challenged by the plaintiff. 11 Int. Com. Com'n R. 129, 141. The commission disposed of the complaint against the Michigan Central Railroad Company, the defendant here, by stating that it had purchased its own refrigerator equipment and would in the future charge $2.50 per ton for the ice actually consumed, and concluding:

"We have found that this is a reasonable price and that company should therefore be dismissed from this proceeding."

In various other instances the commission has made rulings as to the reasonableness of icing charges that were separated from the transportation rate in the schedules. The Truck Farmers' Case, 6 Interst. Com. Com'n R. 295; The Citrus Fruit Case, 9 Interst. Com. Com'n R. 182; Id., 10 Interst. Com. Com'n R. 590, 608; The Michigan Fruit Case, 10 Interst. Com. Com'n R. 360.

But, even if it could be said that the defendant violated the provisions of the act of Congress (Act Feb. 4, 1887, c. 104, § 8, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3159]), by dividing its rate and separately specifying a charge for icing, it does not follow that plaintiff has made a case. This action was brought under the eighth section of the act:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

To support a recovery under this section, there must be a showing of some specific pecuniary injury. A cause of action does not necessarily arise from those acts or omissions of a common carrier that may subject it to a criminal prosecution by the government, or to corrective or coercive proceedings at the instance of the commission. It is not every imperfect or inaccurate specification of rates in the schedules that will give to a shipper a cause of action for damages. He must show, either that there has been some unreasonable or excessive charge imposed, or some unlawful discrimination practiced against him. The plaintiff here, having founded his cause of action upon a technical construction of the law, and without the basis of any ruling or order of the commission, seeks to recover without proof of pecuniary damage. The schedules of rates filed with the commission clearly showed that there was a charge for icing, and that it was not included in or absorbed by the ordinary second-class rate from Matawan, Mich., to Duluth, Minn. Stating this fact conversely: It clearly appeared that the second-class rate specified in the schedules, and doubtless applying to many commodities that are not moved under refrigeration, did not include compensation for the icing of cars containing fruits that do require refrigeration. It goes without saying that the icing service entails an expense not required in the transportation of most commodities, and that it calls for a just and reasonable recompense. There is no presumption that rates specified in official schedules are unjust and unreasonable. The record before us discloses no finding and ruling of the commission against the reasonableness of the rates, and there was no proof upon the subject. There was no proof that what the plaintiff actually paid was in excess of a reasonable compensation for the services performed, whether considered separately or in the aggregate; nor does it appear that any discrimination of any kind or character was practiced against it. In the absence of a showing of injury or damage, there can be no recovery.

But one other matter requires notice: The plaintiff complains of a denial by the trial court of its application for an order requiring the presence at the trial of officers of the defendant and the production of records. Without considering the sweeping and general character of the application, or whether the plaintiff secured all that was required by the testimony of the officer whose deposition was taken and by the documents read in evidence at the trial, it is sufficient to say that no exception appears to have been taken to the ruling of the court.

The judgment is affirmed.