## LEHIGH VALLEY R. CO. v. AMERICAN HAY CO.

(Circuit Court of Appeals, Second Circuit.   December 15, 1914.)

No. 91.

1. COMMERCE ☞87—DISCRIMINATION—INTERSTATE COMMERCE COMMISSION—
JURISDICTION—COMPLAINT—AMENDMENT.
Where a complaint to the Interstate Commerce Commission was filed January 12, 1910, and dealt only with transactions prior to that date, the Commission had power to permit an amendment of the complaint so as to incorporate transactions occurring to the date of the hearing and to make findings and orders, including such transactions as fully as if a new complaint had been filed to cover the same.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec. Dig. ☞87.]

2. COMMERCE ☞86—DISCRIMINATION—INTERSTATE COMMERCE COMMISSION—
FINDINGS.
The Interstate Commerce Commission is not required to make formal marked and numbered findings, but its findings may be contained in the colloquial statements of an opinion.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 140; Dec. Dig. ☞86.]

3. CARRIERS ☞201—INTERSTATE COMMERCE—DISCRIMINATION.
Where an interstate carrier permitted reconsignment of hay at a division point free of charge, provided such reconsignment was made within 24 hours after arrival of cars, and charged $2 per car for reconsignment of hay at another point, without reference to time, such facts sufficiently showed a prima facie case of discrimination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. ☞201.]

4. CARRIERS ☞201—INTERSTATE COMMERCE—RECONSIGNMENT CHARGE—DIS-
CRIMINATION—DAMAGES.
Though a carrier was guilty of discrimination in making a reconsignment charge of $2 at a point where plaintiff reconsigned hay in the course of its business over the carrier's railroad, while it permitted reconsignment free at another point, if made within 24 hours, did not necessarily entitle plaintiff to recover $2 per car reconsigned as damages, in the absence of proof that he in fact suffered the loss.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. ☞201.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error by defendant below to review a judgment of the District Court, Southern District of New York, entered in favor of plaintiff below; verdict was rendered under direction of the court.

The action was brought by the American Hay Company under section 16 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [Comp. St. 1913, § 8584]) to recover damages for a discrimination by the railroad company in that certain tariff privileges were accorded at Sayre, Pa., a division terminal which were not accorded at Townley, N. J., where plaintiff had a hay shed at which trains stopped.   The alleged discrimination consisted in this that there was accorded the right to reconsign hay at Sayre free of charge, provided such reconsignment was made within 24 hours after the

actual time of arrival of the cars, otherwise a charge of $2 per car was imposed, where, as at Townley, during the same period, plaintiff was charged $2 a car, whether or not such reconsignment was made within 24 hours. It was also charged before the Commission that the charge of $2 was excessive. The action was based on a report of the Interstate Commerce Commission.

S. C. Pratt, of New York City, for plaintiff in error.

H. Goldmark, of New York City, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The defendant contends that the Commission had no authority to award damages because such award was on the Commission's own initiative; section 13 providing that, where it proceeds with an inquiry instituted on its own motion, it has no power to make or enforce any order for the payment of money.

The complaint to the Commission was filed January 12, 1910. Manifestly it dealt only with the transactions prior to that date—as to which the Commission found in favor of the railroad, holding that $2 was a reasonable charge, and that there had been no discrimination down to that date. The discrimination found against the railroad, and for which damages were assessed against it, was a discrimination between June, 1910, and December, 1910. If inquiry touching transactions in this period had been made by the Commission solely on its own motion, there might be some force in the point raised. But we see no ground for holding that it was not in the power of the Commission to allow a complaint to be amended or supplemented by incorporating transactions of a period later than its date of filing, especially when no objection to such amendment is interposed. There is no evidence that any such objection was raised; on the contrary, it is stated and not contradicted that both sides took testimony as to the later period. If that is so, the Commission might surely make findings and orders about the later period, as fully as if a new complaint had been filed to cover it.

[2] The next contention is that there are no findings of fact. No formal marked and numbered set of findings is required. Findings are findings just as well when imbedded in the colloquial statements of an opinion. From the opinion it is apparent that there is found:

(1) Since October 1, 1906, and until December 1, 1910, a tariff charge was made at Townley of $2 per car for inspection, grading and reconsignment.

(2) Since May 1, 1909, and until June 17, 1910, a tariff charge was made at Sayre of $2 for similar purposes, with proviso for no charge provided order for diverting cars should be filed immediately upon or prior to arrival.

(3) Since June 17, 1910, until decision (June, 1911), there was in force a change in the Sayre tariff which relieved of payment of the $2 when orders for reconsignment were given *within 24 hours after arrival*.

(4) Since December 1, 1910, a revised tariff has been in force which gave the same 24-hour privilege of free reconsignment at Townley, as at Sayre.

(5) By stipulation of both sides, there were within the period from June 17th to December 1st 731 cars reconsigned, upon which $2 each was paid. This amounts to $1,462.

The amount was subsequently corrected to $1,362, in consequence of some error in calculating Sundays and holidays.

The facts seem to us sufficiently found to comply with the requirements of the act.

[3] There is no question as to the amount, $1,362. Nor, as we understand it, is there any point raised that the Commission erred in finding that, while the one place had the privilege and the other had not, there was "an undue discrimination between complainant at Townley and its competitors at Sayre." Even if such point were taken, it would not avail on this record. If all the facts are the facts above recited (and they are all *we* have because the testimony taken before Commission is not here), we think that such discrimination was shown. It is quite conceivable that it might also be shown that the situation was such that there was no real discrimination—perhaps that there were no competitors at Sayre, or what not—but surely there must be something shown to do away with the effect of the significant fact that at one point there is a charge of $2 for services which elsewhere on the same railroad are freely rendered.

Finally it is contended that in an action under section 16 of the act there must be proof of damages sustained, and that such proof is lacking here.

[4] As a matter of first impression it would seem that when one shipper is made to pay to a railroad, through discrimination either in rebates or in charges for special services, a definitely ascertained larger sum than his competitors are charged for transportation of goods, he is damaged to that amount, or at at least there is a prima facie showing of damages sustained by himself. Two decisions of the Court of Appeals for the Third Circuit are to the contrary of this proposition (Lehigh Valley Railroad v. Clark, 207 Fed. 717, 125 C. C. A. 235; Lehigh Valley Railroad v. Meeker, 211 Fed. 785, 128 C. C. A. 311), and it seems to us that the decision of the Supreme Court in Pennsylvania Railroad v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, requires the same conclusion. In that case by means of rebates given to others and refused to itself the shipper had been charged for transportation a greater sum than was collected from its competitors. The amount of the excess was determined and the fact that it was paid to the railroad was proved. The court said:

"But the plaintiff may have sold at the usual profit all or part of its 40,000 tons at the regular market price; the purchaser, on his own account, paying freight to the point of delivery. In that event, not the shipper, but the purchaser, who paid the freight, would have been the person injured, if any damage resulted from giving rebates."

The facts in the case at bar seem to us indistinguishable from those in the case last cited. It is not enough to show that the American Hay Company paid the railroad these various items of $2; for aught that appears the persons to whom it sold may have themselves paid

all those charges, or some of them, or some part of each charge. Just how the initial payment of each $2 resulted in damages to the company, if it were damaged, is a matter wholly within the knowledge of the hay company, and not presumably within the knowledge of the railroad company. Proof that damages did result from the initial payment is part of the plaintiff's case, and, without affirmative proof to show such damages, it was not entitled to a verdict.

The judgment is reversed.