## HOMESTEAD CO. v. DES MOINES ELECTRIC CO.

(Circuit Court of Appeals, Eighth Circuit.   January 7, 1918.)

### No. 4889.

1. CORPORATIONS ☞382½, New, vol. 16 Key-No. Series—PUBLIC SERVICE CORPORATIONS—DISCRIMINATION.

It is the duty of a public service corporation, lawfully authorized to use the streets and public places of a municipality in order to furnish to consumers water, gas, electricity, light, heat, power, or any other public utility, to render like contemporaneous service for like compensation to consumers conducting like operations under like conditions and circumstances, and for unjust discrimination between competitors and substantial injury to one of them, caused by a breach of this duty, the injured competitor may maintain an action in tort against the corporation for the pecuniary loss inflicted upon him by such discrimination.

2. DAMAGES ☞159(1)—ACTION FOR DAMAGES—PLEADING AND PROOF.

In such an action, defendant's liability is not for money had and received, but in tort for damages, which are not measured by the difference between the amount plaintiff paid and the amount he would have paid, if charged at the same rate as his competitor for like service, but may be either more or less, and must be pleaded and proved.

3. CORPORATIONS ☞382½, New, vol. 16 Key-No. Series—PUBLIC SERVICE CORPORATIONS—DISCRIMINATION IN RATES.

Unreasonable rates charged by a public service corporation are either those that are so low as to be noncompensatory or so much higher than merely compensatory rates that they are exorbitant. The fact that two rates or two sets of rates are unjustly discriminating neither establishes nor necessarily implies that either of them is unreasonable.

4. CORPORATIONS ☞382½, New, vol. 16 Key-No. Series—PUBLIC SERVICE CORPORATIONS—RATES.

Where maximum rates which may be charged by a public service corporation are prescribed by the state or municipality having authority, such rates are presumptively reasonable, and one charged such rates cannot maintain a suit against the corporation on the ground that they are unreasonable, without having first secured decision or action to that effect by the body having authority to change them.

5. ELECTRICITY ☞11—RATES—DISCRIMINATION—SUFFICIENCY OF COMPLAINT.

The complaint in an action against an electric company, based on alleged discrimination in rates charged for light and power to plaintiff and a

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

competitor receiving like service, *held* to state facts sufficient to constitute a cause of action for the recovery of damages, although it was apparently drawn on the erroneous theory that plaintiff was entitled to recover the difference between the amount paid by it and the amount paid by its competitor as money had and received to its use, and stated no proper measure of damages.

6. DAMAGES ☞40(3)—LOSS OF PROFITS—DESTRUCTION OR INTERRUPTION OF BUSINESS.

The general rule is that the expected profits of a commercial business are generally too remote, speculative, and uncertain to sustain a judgment for their loss; but there is an exception to this rule, to the effect that the loss of profits from the destruction, interruption, or depression of an established business may be recovered, if the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually was.

Stone, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action at law by the Homestead Company against the Des Moines Electric Company. Judgment for defendant (226 Fed. 49), and plaintiff brings error. Reversed.

Frank S. Dunshee, of Des Moines, Iowa (Robert M. Haines and Joseph I. Brody, both of Des Moines, Iowa, on the brief), for plaintiff in error.

Frank T. Jensen and Charles S. Bradshaw, both of Des Moines, Iowa, for defendant in error.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. The question which this case presents is the sufficiency of the facts stated in the complaint to constitute a cause of action, and it is brought to the attention of this court by a writ of error to reverse an order and judgment which sustained a general demurrer.

The grievance of the plaintiff is that the defendant, Des Moines Electric Company, a public service corporation, that was engaged in furnishing light and power to the plaintiff, and to other consumers thereof, in the city of Des Moines, unjustly discriminated against the plaintiff in the rates it charged and collected for the light and power it furnished, in that (count 1) it charged and collected of the plaintiff's competitor in that city, the Register & Leader Company, a corporation, only about 40 per cent. of the amount charged and collected of the plaintiff for contemporaneous service for like operations under substantially similar circumstances and conditions, to the plaintiff's damage in the sum of $2,950.94, which was 60 per cent. of the amount the plaintiff paid for the defendant's service in the operation of that part of its business in competition with the business of the Leader Company; (2) in that (count 2), while the defendant charged and collected of many of its other customers low and reasonable rates, it charged and collected of the plaintiff for similar service higher rates that were unreasonably exorbitant, and $4,918.23 in excess of rea-

sonable, just, and compensatory rates; and (3) in that (count 3) the defendant divided its customers by a specified standard into wholesalers and retailers, and established a low and reasonable rate for its service to wholesalers and a higher rate for its service to retailers, that by the specified standard the plaintiff was a wholesaler, but the defendant charged and collected of it the retail rates, under the false representation that it was serving the plaintiff at rates as low as it was serving any of its customers in a like situation, when the fact was that it was exacting from the plaintiff $2,321.80 more than it would have collected from it, if it had collected the wholesale rates, and was thereby charging and collecting unreasonably exorbitant rates, $2,321.80 in excess of reasonable and compensatory rates.

The first count of the complaint set forth these facts: During all the time in which the plaintiff alleged that the defendant was exacting from it discriminatory and exorbitant rates, those rates did not exceed the maximum rates which, by an ordinance of the city of Des Moines, the defendant was expressly authorized to charge and collect for furnishing the light and power. During this time the plaintiff was printing a newspaper and operating a job printing, electrotyping, and photo-engraving plant, and the Leader Company was running two daily newspapers and a job printing and photo-engraving plant. The job printing and photo-engraving plant of the Leader Company was operated, as was the plaintiff's like plant, by a large number of motors for the most part in the daytime. The light and power to operate each of them were furnished by the defendant during the same time under like conditions. The two plants put forth the same kind and quality of work, the owners of these plants bought and sold in the same market, and the Leader Company was the plaintiff's most active competitor. There was an established market value for the products of the two plants, so that the plaintiff was unable to charge more for its output than was charged by the Leader Company for its similar products. The defendant during the time specified furnished the Leader Company the light and power to operate its job printing and photo-engraving plant at a rate which was only about 40 per cent. of the rate it charged and collected for the light and power it furnished the plaintiff to operate its like plant. The Leader Company, by reason of receiving this light and power at a rate which was 40 per cent. of the rate collected of the plaintiff, was enabled to and did put out its product more cheaply than the plaintiff could send its output forth, was enabled to and did bid under the plaintiff in making competitive prices for printing and photo-engraving, the plaintiff was obliged to meet the prices set by the Leader Company in order to hold its printing and photo-engraving business, its overhead expense was unduly increased by the high rates the defendant exacted from it, and it "was deprived of its fair, legitimate profit, and damaged" to the extent of $2,950.94, which is 60 per cent. of the amount it paid the defendant for the light and power which the latter furnished to operate its job printing and photo-engraving plant.

The sufficiency of these facts to constitute a cause of action for unjust discrimination is denied on the grounds (a) that the plaintiff

is not entitled to recover on account of such discrimination the difference between the amount it paid and the amount it would have paid at the rate its competitor enjoyed, and that that difference is not the measure of its damages; (b) that the facts pleaded failed to show that the plaintiff and the Leader Company were situated alike; and (c) that they do not disclose facts sufficient to sustain a recovery for loss of profits.

The sufficiency of the facts set forth in the second and third counts, each of which is based on a claim that the rates charged to and collected by the plaintiff were exorbitant and unreasonable, because they exceeded those charged and collected of other consumers, and by each of which the plaintiff seeks to recover as money had and received the difference between the amount the plaintiff paid and the amount it would have paid, if the rates to it had been just and reasonable, is denied on the ground that, where maximum rates are prescribed for the service of a public service corporation by a state or a municipality lawfully empowered so to do, no individual consumer or party interested in the rates, who has paid rates not exceeding the prescribed limit, may maintain an action against the corporation on the ground that those rates were unreasonable or exorbitant.

There have been conflicting decisions and there has been much discussion about some of the questions which the propositions asserted by counsel present. But a review of the opinions of the courts and a thoughtful consideration of the arguments of counsel have convinced that the stronger reasons and the weight of authority have established these rules of law by which the decision of the question presented in this case must be determined.

[1] It is the duty of a public service corporation, lawfully authorized to use the streets and public places of a municipality in order to furnish to consumers water, gas, electricity, light, heat, power, or any other public utility, to render like contemporaneous service for like compensation to consumers conducting like operations under like conditions and circumstances. For unjust discrimination between competitors, and substantial injury to one of them caused by a breach of this duty, the injured competitor may maintain an action in tort against the public service corporation for the pecuniary loss inflicted upon him by such discrimination. Curtis on Electricity, § 36; Western Union Telegraph Co. v. Call Publishing Co., 181 U. S. 92, 99, 100, 21 Sup. Ct. 561, 45 L. Ed. 765; Pennsylvania R. R. Co. v. International Coal Co., 230 U. S. 184, 203, 204, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Armour Packing Co. v. Edison Electric Illuminating Co., 115 App. Div. 51, 100 N. Y. Supp. 605, 607; St. Paul Book & Stationery Co. v. St. Paul Gaslight Co., 130 Minn. 71, 153 N. W. 262, 266, Ann. Cas. 1916B, 286.

[2] Unjust discrimination will not sustain an action against a public service corporation, in favor of the injured competitor, for the difference between the amount he paid and the amount he would have paid if he had paid at the same rate as his competitor similarly situated for like service, as for money had and received, or any other action at law, except an action in tort for his damages. Nor is such

difference the measure of his damages. They may be the same as, or more or less than, such difference, and they must be pleaded and proved before they may be recovered. Pennsylvania R. Co. v. International Coal Co., 230 U. S. 184, 198, 200, 201, 202, 203, 206, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Meeker & Co. v. Lehigh Valley R. R. Co., 236 U. S. 412, 429, 35 Sup. Ct. 328; Lehigh Valley R. R. Co. v. Clark, 207 Fed. 717, 724, 725, 731, 125 C. C. A. 235; Lehigh Valley R. Co. v. American Hay Co., 219 Fed. 539, 541, 542, 135 C. C. A. 307; Knudsen-Ferguson Fruit Co. v. Michigan Central R. Co., 148 Fed. 968, 79 C. C. A. 46; Hoover v. Pennsylvania R. Co., 156 Pa. 220, 27 Atl. 282, 290, 22 L. R. A. 263, 36 Am. St. Rep. 43.

[3] In the making, regulation, and litigation regarding rates, "unreasonable rates" are either those that are so low as to be noncompensatory, or those that are so much higher than merely compensatory rates that they are exorbitant. The fact that two rates, or two sets of rates, are unjustly discriminatory, neither establishes nor necessarily implies that either of them is "unreasonable." Interstate Commerce Comm. v. Baltimore & Ohio R. R. Co., 145 U. S. 263, 277, 12 Sup. Ct. 844, 36 L. Ed. 699; American Express Co. v. South Dakota, 38 Sup. Ct. 656 (U. S. Supreme Court opinion filed June 11, 1917).

[4] A public service corporation furnishing its utility under and pursuant to an act of the Legislature of a state, or under a lawful ordinance of a city, or under other legal provision, which prescribes maximum rates for its service, may fix its own rates, not exceeding the limit thus prescribed, and such rates are presumed to be reasonable. Individuals interested therein as consumers, users, or otherwise may not maintain actions at law or suits in equity against the public service corporation, on the ground that such rates are unreasonable, without having first secured decision or action to that effect by the public tribunal authorized to prescribe the maximum limit of the rates changing the limit, or adjudging the rates complained of unreasonable. Griffith v. Vicksburg Waterworks Co., 88 Miss. 371, 40 South. 1011, 1014, 8 Ann. Cas. 1130; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 509, 515, 516, 27 Sup. Ct. 762, 51 L. Ed. 1155; St. Paul Book & Stationery Co. v. St. Paul Gaslight Co., 130 Minn. 71, 153 N. W. 262, 264, 265, Ann. Cas. 1916B, 286; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 432, 433, 436, 437, 439, 440, 441, 443, 446, 447, 448, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Paris Mountain Water Co. v. Camperdown Mills, 98 S. C. 304, 82 S. E. 417, 418; Union Dry Goods Co. v. Georgia Public Service Corporation, 142 Ga. 841, 83 S. E. 946, 947, L. R. A. 1916E, 358; Brooklyn Union Gas Co. v. City of New York, 188 N. Y. 334, 81 N. E. 141, 142, 15 L. R. A. (N. S.) 763, 117 Am. St. Rep. 868.

[5] The application of these rules to the facts pleaded compels the conclusions: (1) That the second and third counts of the complaint state no cause of action because they are founded on the claim that the rates charged to and collected of the plaintiff were exorbitant, extortionate and unreasonable, although they were less than the max-

imum rates prescribed and adjudged reasonable by the city, and that tribunal has never adjudged them unreasonable, or modified the terms or effect of its prescribing ordinance; (2) because by these counts the plaintiff seeks recovery of the difference between the presumptively reasonable rates the plaintiff paid and the lower rates other consumers of light and power similarly situated paid, not on the ground of damages sustained, but on the ground that this was money had and received by the defendant which equitably belonged to the plaintiff, and an action of that character is not maintainable for this difference; and (3) the facts set forth in the first count of the complaint will not sustain an action as for money of the plaintiff had and received by the defendant for the difference between the amount which the plaintiff paid and the amount it would have paid if it had been charged the rates its competitor, the Leader Company, enjoyed, and the only cause of action they may be sufficient to maintain is one in tort for the pecuniary loss caused to the plaintiff by the alleged unlawful discrimination, and the difference between the amount paid by the plaintiff and the amount he would have paid at the rates charged its competitor is not, and the pecuniary loss caused by the unjust discrimination is, the measure of those damages.

It is contended that the facts pleaded are insufficient to sustain a cause of action for these damages, because those facts do not show that the plaintiff and the Leader Company were similarly situated, or that they received like service from the defendant, in that they disclose the fact that the defendant, in addition to furnishing like light and power to the two competitors for their respective job printing and photo-engraving plants, furnished light and power to the plaintiff to enable it to print a newspaper and operate an electrotyping plant, and to the Leader Company to enable it to print two newspapers. The plaintiff makes no claim of any unjust discrimination in the furnishing of light and power for the printing or operation of the newspapers or the electrotyping plant, but it alleges that the two job printing plants were engaged in the same business, manufacturing and selling like and competitive products, that their owners bought and sold in the same markets, that the defendant furnished their job printing and photo-engraving plants like power and collected of the owner of one but 40 per cent. of the rates it charged and collected of the other, and that this was done during the same period of time. There can be no doubt that if the only service rendered by the defendant to the plaintiff and to the Leader Company had been to furnish them light and power for their job printing and photo-engraving plants the averments of these facts would have been ample to permit full proof that the two companies were similarly situated and were receiving like service at the same time and place, and that the defendant unjustly discriminated against the plaintiff in its charges and collections. It is possible that in the charges and collections for the other services which the defendant rendered to the two competitors it discriminated against the Leader Company to an amount equal to the amount by which it discriminated against the plaintiff in the collection of charges for the service to the job printing and photo-engraving

plants, or that there was some other fact or condition to offset the unjust discrimination which it is alleged the defendant committed in its treatment of these plants. But in the absence of pleading or proof of any such counter discrimination or offset the court may not presume the existence thereof, and on the face of the complaint the light and power furnished to the two job printing and photo-engraving plants is alleged to have been so like and to have been furnished to competitors so similarly situated as to present a sound basis for the averment of unjust discrimination.

Counsel for the defendant argue that the cause of action set forth in the first count is not in tort for damages, but is for the difference in the amount charged and collected of the plaintiff for the service of the defendant to its job printing and photo-engraving plant, and the amount it would have paid for that service at the rates charged to the Leader Company for like service, and that it is based on the claim that the amount of this difference constitutes money had and received by the defendant which justly and equitably belonged to the plaintiff. The pleading lends plausible support to this argument, and indicates that the pleader may have indulged the hope that his client could recover this difference, without proof of damages caused by the unjust discrimination, upon the theory which has been stated. But the question before this court is not one of the form of the action or of the theory of counsel. It is, does the complaint state facts sufficient to sustain an action in tort for damages caused by the unjust discrimination? It sufficiently states like contemporaneous services to the job printing and photo-engraving plants of the two competitors, the like business situation and circumstances of the competitors and of their plants, and the charge and collection from one of rates $2\frac{1}{2}$ times the rates collected of the other, avers that this discrimination compelled the plaintiff to pay for substantially like service $2,950.46 more than it would have paid at the rates charged the Leader Company, that on account of its competitive relation with that Company it was compelled to sell the product of its job printing and photo-engraving business at the prices set by the Leader Company, and that, "its overhead expense being unduly increased by the unfair requirements of defendant, plaintiff was deprived of its fair and legitimate profit and damaged to the extent of said overcharge." The complaint then "demands damages against defendant for the sum of $2,950.94 actual damages with interest thereon." Since a demand of a specific amount of damages permits the recovery of any less amount that may be proved, the averment of the specific amount of the damages and the prayer therefor does not disqualify this complaint from sufficiently pleading a cause of action in tort for unjust discrimination.

[6] It is contended, however, that the only damages pleaded are loss of profits, and that the nature, character, extent, and facts showing the certainty of such loss of profits have not been sufficiently set forth. It is true that the general rule is that the expected profits of a commercial business are generally too remote, speculative, and uncertain to sustain a judgment for their loss. But there is an exception to this

rule, to the effect that the loss of profits from the destruction, interruption, or depression of an established business may be recovered, if the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually was. It is true that the proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts, from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn. Central Coal & Coke Co. v. Hartman, 111 Fed. 96, 98, 99, 102, 49 C. C. A. 244, 246, 247, 250. It is not, however, necessary in pleading such profits to set forth all the details of the requisite proof. In the case at bar the pecuniary loss which the unjust discrimination inflicted upon the plaintiff, and not the difference between the amount it paid and the amount it would have paid at the rates charged the Leader Company, is the measure of its damages. Those damages may be the same amount as that difference; they may be more, and they may be less. The plaintiff in effect avers in this complaint that, if the defendant had not unjustly discriminated against it, it would have sold the same amount of its products from its job printing and photo-engraving plant for the same prices that it did sell them, and that it would in that case have had left, after paying its expenses, larger profits than it did have by the $2,950.94 which the defendant exacted of it by the unjust discrimination. It may be that the plaintiff will have difficulty in proving, it may be that it will be unable to prove, such or any loss of profits under the wise and conservative rules of law which guard against speculation, uncertainty, and conjecture in the determination of such losses. But the averments of the complaint are sufficient to permit it to present competent evidence of a loss of profits caused by the unjust discrimination it pleads upon the theory set forth in its complaint.

The judgment below is accordingly reversed, and the case is remanded to the District Court, with instructions to permit the defendant to answer the complaint.

STONE, Circuit Judge (concurring in part and dissenting in part). This is a suit by a patron against a public service corporation, lawfully authorized to use the streets and public places of a municipality in order to furnish consumers with electric light and power. The entire petition is a tort action in its pleading. The first count is for damages because of a discriminatory rate; the second and third counts for damages because of unreasonable rates.

I concur in the result reached, but not entirely with the rules of law laid down. Because of the importance of the subject involved, I feel obligated to state wherein I disagree. I agree that discrimination and unreasonableness in rates are distinct and separate grievances, and that the existence of either is, as to the patron, a tort. I am compelled, respectfully, to disagree with the announcement that in cases of discrimination the remedy of money had and received can never be employed, and with a portion of the rule of damages set forth.

As to the remedy and proof in cases of discrimination: One of the fundamental principles of our form of government is equality to every person of opportunity and treatment, so far as governmental action extends. This is illustrated in the national and state Constitutions, which forbid and render nugatory all state action resulting in discrimination between members of the same legal classification. The same right of equality inheres in all governmental activity, and, because of the quasi public character thereof, it has its full place in all public service activity. As said by Mr. Justice Brewer, in speaking of one kind of such service (common carriage):

"Common carriers, whether engaged in interstate commerce or in that wholly within the state, are performing a public service. They are endowed by the state with some of its sovereign powers, such as the right of eminent domain, and so endowed by reason of the public service they render. As a consequence of this, all individuals have equal rights, both in respect to service and charges." Western Union Teleg. Co. v. Call Pub. Co., 181 U. S. 92, 99–100, 21 Sup. Ct. 561, 564 (45 L. Ed. 765).

The evil results of departures by utility companies from this salutary rule of public policy are common knowledge and have received full judicial recognition. That public service companies can, through illegal discrimination, often affect and even control competitive business conditions among their customers, to the extent of enriching one and ruining the other, has been too frequently demonstrated. Even irrespective of competition, favoritism in service or charge may be used for purposes injuriously affecting both the consumer and the public. Without passing upon the truth of the allegation contained in the present petition, yet it is illustrative of possibilities along this line. The statement is:

"The plaintiff further states that the Register & Leader Company, as has been heretofore stated, is the publisher of two daily newspapers having wide circulation in the city of Des Moines, and said company has great influence in city politics and in the conduct of city affairs, and the said discriminatory rates to the Register & Leader Company were granted by the defendant with the corrupt purpose to thereby secure the good will of the Register & Leader Company and its influence in preventing the repeal of the aforesaid Ordinance No. 1566, in order that the defendant might continue to charge the excessive and unreasonable rates specified in said ordinance, and reap the excessive and unreasonable profits which it could make from customers who were unable to protect themselves, and said corrupt bribe was paid to the Register & Leader Company in total disregard of defendant's duty in the premises and in total and wanton disregard of the losses which defendant was thereby inflicting upon plaintiff, and said bribe was paid stealthily and secretly, and with the purpose that same should never be detected, and the payment of said bribe was tortious, wrong, and unjust. * * *"

The above considerations emphasize the necessity of preventing such discrimination, and of shaping the rules of law to that end. This conception is intensified by the thought that discrimination must find its source in the voluntary act of the utility company.

The preventive methods, not statutory, variously tried, have been mandamus, bills in chancery, and suits for damages by the injured party. Obviously, not the least effective methods are such as these, which place a weapon in the hands of the injured party, who, moved

by impulses of self-protection, necessarily acts in the public interest at the same time.

This obligation of equal service being one imposed by law, its violation is, as to the individual, a tort. But wherever one person commits a tort against the estate of another, with the intention of benefiting his own estate, or wherever justice requires it in consideration of benefits received, the tort may be waived and assumpsit brought for the money benefit so received. 1 C. J. 1032; Fanson v. Linsley, 20 Kan. 235; Norden v. Jones, 33 Wis. 600, 14 Am. Rep. 782. It may be noted that Mr. Justice Brewer, then of the Kansas Supreme Court, concurred in the opinion in Fanson v. Linsley. Therefore, though primarily the form of action for such wrong is tort, it is not necessarily so in all instances, for (as with other torts), if this tort has resulted in the payment by the wronged party of money to the public utility which should not have been paid, then the tort may be waived and recovery of that money obtained through an action for money had and received. Armour Packing Co. v. Edison, etc., Co., 115 N. Y. App. Div. 51, 100 N. Y. Supp. 605. Of course, the waiver of the tort would forfeit all right to consequential damages and confine recovery to the sum wrongfully exacted and withheld.

If the action brought be a tort, it would seem to be subject to the ordinary rules pertaining to such suits. The pleading and proof must cover the wrongful act and the quantum of damages. The wrongful act is the denial to one patron of a rate or service accorded another patron in the same legal classification. When this wrongful act has been proven, the right to recover has been established. The remaining inquiry is purely one of quantum of damages. The damages are compensatory, but there would seem to be no reason why, if the proper elements of willfulness and malice exist, exemplary damages should not be allowed—particularly if it also appear difficult to estimate in money the injury. Scott v. Donald, 165 U. S. 58, 89, 17 Sup. Ct. 265, 41 L. Ed. 632; Day v. Woodworth, 13 How. 363, 371, 14 L. Ed. 181; Press Pub. Co. v. Monroe, 73 Fed. 196, 19 C. C. A. 429, 51 L. R. A. 353; Wilson v. Vaughn (C. C.) 23 Fed. 229.

In proof of compensatory damages, the ordinary rules of evidence would seem proper and sufficient. Where the discrimination is in service or facilities, there is apparently no common circumstance or fact to aid in the damage inquiry. But I cannot escape the conviction that, where the discrimination is in charge or rate, there is present a minimum measure of damages; i. e., the difference in charge or rate. The legal right is to as good treatment (as low a charge or rate) as is given any other legally similar patron. The tort is in a refusal of that treatment. Certainly there is an injury equaling the difference in money value of the treatment (charge or rate) to which the patron was entitled and that which he received. Public policy, in my judgment, requires this view, for otherwise there could never be recovery in any case of rate or charge discrimination, unless there existed competitive conditions between the patrons involved in the discrimination. What possible other loss or damage is suffered by the householder, who pays one price for his domestic use of gas, wa-

ter, or electricity, while his next-door neighbor, for precisely the same service, rendered under precisely the same circumstances, pays only one-half as much? Or what other injury has the woolen manufacturer received when he pays twice the rate for electric power as does the adjoining candy maker, for precisely the same service, under precisely the same circumstances? Where there is business competition it may be that the discriminating rate has so heavily affected the fixed charges of production as to result in further damage; but, barring competition, the difference in the rate measures the damage, or there is none legally provable. In short, either the definition of what constitutes illegal discrimination as to rates or charges must be so altered as to exclude all of that great class which do not happen to be business competitors, and injured in their business competition, or there results the anomaly of one rule of common law giving a right (valuable not only to the individual, but to the public good), and another rule of the common law, rendering the protection of that right impossible.

Where, as in the present case, competitive conditions are present, and alleged to be affected by the discrimination, there is an additional consideration. The object of business is profit. When any one by an unlawful act reduces the profit of another, the law provides for restitution of that loss. Competition limits the sale price. When a business man is given a lower rate for power, or some other element entering into the fixed cost of the article he produces, it is an absolute certainty that his profit has been increased by just the amount of the reduction. It is equally certain that every competitor has been put at a disadvantage in just that sum. If the competitors have a right to that reduction, and do not receive it, they are damaged, and in just that amount.

The mistake, as I see it, sometimes made in the consideration of the element of damage in discrimination cases, is that nothing is regarded as damage unless it be an actual diminution of the existing property of the one paying the higher rate. So it has been said that if the reduction has resulted in no disarrangement of selling prices, so that the business of the one paying the higher rate has gone on undisturbed, he has not been damaged, though his competitor may have been benefited, and that he cannot complain of a benefit to another. The fallacy is that he is not complaining that some one else has received a benefit; he is complaining because he has not received the same benefit. The law says that he has a legal right to that benefit. If he had this benefit, his profit would be enhanced to just that amount, because his cost price would be just so reduced. His damage is in being deprived of a right (benefit), the value of which can, in such an instance, be definitely and accurately gauged, although his existing business shows no diminution nor disturbance. The point of view is vital. The law leaves it entirely open for the public utility to grant any favor it desires by lowering its charges. Its only condition is that what is granted to one must be given to all similarly situated. The wrong is not in reducing the rate to one; it is in not reducing it to each of the remainder. New York, N. H. & H. R. Co. v. Ballou & Wright, 242 Fed. 862, 865,

248 F.—29

—— C. C. A. —— (C. C. A. 9th C.); Wyman Pub. Serv. Corp. § 1290, and citations.

But the favored one may not be satisfied to quietly receive the additional profit through the reduced rate. He may carry this advantage into business competition. He may reduce his selling prices to such an extent as to get business his competitors might have secured or retained. He may do this to the extent of driving them out of business, ruining them, and obtaining a monopoly for himself. These but add to the injury and the resulting damage. If claimed, they must be supported by proof.

The cases of Penn R. Co. v. International Coal Mining Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315, Meeker & Co. v. Lehigh Valley R. R. Co., 236 U. S. 412, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691, Lehigh Valley R. R. Co. v. Clark, 207 Fed. 717, 125 C. C. A. 235, Lehigh Valley R. R. Co. v. American Hay Co., 219 Fed. 539, 135 C. C. A. 307, Knudsen-Ferguson Fruit Co. v. Michigan Central R. Co., 148 Fed. 968, 79 C. C. A. 46, and Hoover v. Penn. R. Co., 156 Pa. 220, 27 Atl. 282, 22 L. R. A. 263, 36 Am. St. Rep. 43, cited in the majority opinion, do not, in my judgment, necessarily lead to a different conclusion. The Knudsen-Ferguson Case did not involve discrimination in any way. I do not find that the other cases brought before the court the propriety of employing the remedy of money had and received. They did hold the rule of damage, where the action brought was in tort, to be as announced; but in each of them the court was construing a statute, while this case involves the definition and application of rules of common law. Also, the statute in question (except in Hoover v. Railroad) involved the important consideration of a published tariff, from which no legal deviation could be made. In such cases there is the vital difference that the lower rate (a departure from the published rate) was, in and of itself, a forbidden, unlawful rate, aside from any question of discrimination, and no one, because of discrimination, or for any other reason, could make that unlawful act the foundation of a right to the same unlawful act in his favor (Paris Mountain Water Co. v. Camperdown Mills, 98 S. C. 304, 312, 82 S. E. 417, 418), while in this case the lower rate was of itself entirely lawful, but a tort was committed in not giving the same rate to others of the same class.

My conclusion, therefore, is that the first count of the petition is good; that there can be no recovery on any theory of money had and received, because the pleading is for a tort; that proof of facts constituting illegal discrimination in the rate charged, joined to proof of the difference in rate, would authorize recovery for the difference in what plaintiff did pay and would have paid under the lower rate; that any further damage arising from a disturbance of competitive conditions must be proven. Hence the demurrer to this count should have been overruled.

As to the demurrer to the second and third counts of the petition, I agree that the demurrer was properly sustained. Those counts are in tort for damages based on allegations that certain rates were unreasonable. The rates in question were at all times within the maximum

limits of an ordinance passed under state legislative authority as an exercise of police power and not as part of any contract. As long as that ordinance endures, it clothes the rates prescribed therein with a presumption of reasonableness, and no action for damages can be sustained for alleged injury therefrom.

This suit, being one in tort for damages, does not involve the right of individuals as consumers, users, or otherwise, to challenge the reasonableness of the rates established within the city ordinance maximum by a direct proceeding in equity, the result of which would be to sustain or annul the alleged unlawful rates as to all of the class to which the complainant might belong. I am not prepared to say that the citizen may not thus, through an action against the utility company, challenge the reasonableness and validity of such an ordinance. If there be no such right, then it results that where the legislative branch, through statute or ordinance, establishes a maximum rate, such action by implication annuls every common-law remedy the citizen has had to protect himself through the courts from an extortionate rate so authorized. Until that question is squarely presented, I do not care to affirm or deny the existence of such right. It may not, however, be out of place to suggest in this connection the language of Mr. Justice Miller, in his able concurring opinion in Chicago, Milw. & St. Paul Ry. Co. v. Minnesota, 134 U. S. 418, 459, 10 Sup. Ct. 702, 703 (33 L. Ed. 970), where he says:

"3. Neither the Legislature, nor such commission acting under the authority of the Legislature, can establish arbitrarily and without regard to justice and right a tariff of rates for such transportation, which is so unreasonable as to practically destroy the value of property of persons engaged in the carrying business on the one hand, nor so exorbitant and extravagant as to be in utter disregard of the rights of the public for the use of such transportation on the other.

"4. In either of these classes of cases there is an ultimate remedy by the parties aggrieved, in the courts, for relief against such oppressive legislation, and especially in the courts of the United States, where the tariff of rates established either by the Legislature or by the commission is such as to deprive a party of his property without due process of law.

"5. But until the judiciary has been appealed to to declare the regulations made, whether by the Legislature or by the commission, voidable for the reasons mentioned, the tariff of rates so fixed is the law of the land, and must be submitted to both by the carrier and the parties with whom he deals.

"6. That the proper, if not the only, mode of judicial relief against the tariff of rates established by the Legislature or by its commission, is by a bill in chancery asserting its unreasonable character and its conflict with the Constitution of the United States, and asking a decree of court forbidding the corporation from exacting such fare as excessive, or establishing its right to collect the rates as being within the limits of a just compensation for the service rendered.

"7. That until this is done it is not competent for each individual having dealings with the carrying corporation, or for the corporation with regard to each individual who demands its services, to raise a contest in the courts over the questions which ought to be settled in this general and conclusive method."